GAF CORPORATION, Appellant,

v.

UNITED STATES of America.

KEENE CORPORATION, Appellant,

v.

UNITED STATES of America.

EAGLE–PICHER INDUSTRIES, INC., Appellant,

v.

UNITED STATES of America.

Nos. 84–5638, 84–5693 and 85–5655.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 5, 1985.

Decided May 5, 1987.

---

Marcy L. Kahn, New York City, of the Bar of the Supreme Court of Arizona, pro hac vice, by special leave of Court, with whom Jerald Oshinsky, Harold D. Murry, Jr., Washington, D.C., Eugene R. Anderson, New York City, and Lorelie S. Masters, Washington, D.C., were on the brief, for appellant in No. 84–5693.

Paul A. Zevnik, with whom Susan P. Adams, Washington, D.C., was on the brief, for appellant in No. 84–5638.

Edward M. Fogarty, with whom Joe G. Hollingsworth, Washington, D.C., was on the brief, for appellant in No. 85–5655.

M. Faith Burton, Atty., Dept. of Justice, with whom Richard K. Willard, Acting Asst. Atty. Gen., Joseph E. diGenova, U.S. Atty., and Jeffrey Axelrad, Atty., and Janice Griffin O'Reilly, Special Atty., Dept. of Justice, Washington, D.C., were on the brief, for appellee in Nos. 84–5638, 84–5693 and 85–5655. David S. Fishback, Atty.,

Dept. of Justice, Washington, D.C., also entered an appearance for appellee in No. 84–5638.

Before ROBINSON, Circuit Judge, and WRIGHT and McGOWAN, Senior Circuit Judges.

Opinion for the Court filed by Circuit Judge ROBINSON.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

These consolidated cases concern the standard for presentments of tort claims under the Federal Tort Claims Act.[1] Section 2675(a) of the Act requires that tort claimants against the United States present their claims to an appropriate federal agency as a jurisdictional prerequisite to filing suit. The purpose of this requirement is to promote the settlement of claims out of court. Appellants in the cases here consolidated each presented such a claim and subsequently brought suit in the District Court. The court dismissed each case on jurisdictional grounds, for failure to make a proper presentment in accordance with Section 2675(a).[2]

We find that the District Court interpreted the presentment requirement of Section 2675(a) too stringently with respect to GAF Corporation (No. 84–5638) and Eagle-Picher Industries (No. 85–5655). Accordingly, we reverse and remand Nos. 84–5638 and 85–5655 to the District Court. With respect to Keene Corporation (No. 84–5693), however, we find that the District Court correctly determined that Keene was precluded from relitigating the presentment requirement applied to it in earlier litigation before the Second Circuit,[3] and that, judged by this standard, its presentment was deficient. Accordingly, we affirm the District Court's order in No. 84–5693 dismissing the case on jurisdictional grounds.

## I. THE STATUTORY SCHEME

The Federal Tort Claims Act is a limited waiver of the United States' sovereign immunity and renders the Federal Government liable to the same extent as a private party for certain torts of its employees committed within the scope of their employment.[4] But the United States may define the terms upon which it may be sued[5] and absent full compliance with the conditions the Government has placed upon its waiver, courts lack jurisdiction to entertain tort claims against it.[6]

Section 2675(a) imposes one such condition, an administrative-filing requirement, satisfaction of which is a jurisdictional prerequisite to the maintenance of a tort suit against the United States. This Section requires that a claim be "presented" to the appropriate federal agency prior to commencement of a lawsuit.[7] Congress added

1. 28 U.S.C. §§ 1346(b), 2671–2680 (1982).

2. See *GAF Corp. v. United States,* 593 F.Supp. 703 (D.D.C.1984); *Keene Corp. v. United States,* 591 F.Supp. 1340 (D.D.C.1984); *Eagle-Picher Indus. v. United States,* 608 F.Supp. 1071 (D.D.C. 1985).

3. See *Keene Corp. v. United States,* 700 F.2d 836 (2d Cir.), *cert. denied,* 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983).

4. *United States v. Orleans,* 425 U.S. 807, 813, 96 S.Ct. 1971, 1975, 48 L.Ed.2d 390, 397 (1976).

5. *Honda v. Clark,* 386 U.S. 484, 501, 87 S.Ct. 1188, 1197, 18 L.Ed.2d 244, 254 (1967); *United States v. Sherwood,* 312 U.S. 584, 591, 61 S.Ct. 767, 772, 85 L.Ed.2d 1058, 1064 (1941); see also *Soriano v. United States,* 352 U.S. 270, 276, 77 S.Ct. 269, 273, 1 L.Ed.2d 306, 311 (1957).

6. *United States v. Orleans, supra* note 4, 425 U.S. at 814, 96 S.Ct. at 1976, 48 L.Ed.2d at 398;

*Kendall v. United States,* 107 U.S. (17 Otto) 123, 125, 2 S.Ct. 277, 278, 27 L.Ed. 437, 437 (1882). But cf. *United States v. Yellow Cab Co.,* 340 U.S. 543, 549, 71 S.Ct. 399, 404, 95 L.Ed. 523, 530 (1951) (broad scope of waiver in Federal Tort Claims Act militates against "reading into it fine distinctions") (Government may be sued as third-party defendant in action for contribution).

7. 28 U.S.C. § 2675(a) (1982) provides:

An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or

this requirement to the Act in 1966 [8] as part of a package of amendments designed to facilitate out-of-court settlement of claims. Prior to 1966, claimants seeking damages in excess of $2,500 were statutorily required to file suit; the 1966 amendments were intended to remove statutory impediments to claims settlement and provide a framework in which settlement negotiations with the agencies would proceed.[9] The presentment requirement of Section 2675(a) was a key element in the new procedure for claims resolution. Only after a proper presentment has been made may a claimant commence a lawsuit in federal court. Claimants are entitled to file suit at the point at which the claim presented is finally denied, or six months after it is presented if the agency fails to make final disposition of the claim within that period.[10]

Congress made presentment of claims a jurisdictional prerequisite to suits under the Federal Tort Claims Act, but it provided no statutory definition of presentment, nor standards by which its jurisdictional sufficiency might be judged. Courts evaluating the sufficiency of presentments have divided on the question whether the jurisdictional requirements of Section 2675(a) incorporate regulations promulgated by the Justice Department pursuant to its authority to establish procedures for claims settlement under Section 2672.[11] We join the majority of circuits to have considered the

question in holding that these regulations do not govern the jurisdictional requirements of Section 2675(a); rather, the standard for evaluating presentments must be determined with reference to the statutory scheme adopted by Congress in 1966. As we develop below, a jurisdictionally adequate presentment is one which provides to the appropriate agency (1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum-certain damages claim.[12] Discharge of this obligation of notice is sufficient to establish jurisdiction for purposes of suit under the Federal Tort Claims Act.

## II. The Cases

The three cases consolidated in this appeal all involve claims for indemnity or contribution against the United States. In each instance, the companies suing the United States have themselves been sued by persons alleging injury due to exposure to asbestos. Because the facts of the cases are in some respects dissimilar, each will be discussed separately.

### A. *The Facts*

#### 1. GAF Corporation

GAF seeks to recover from the United States damages it has sustained in defend-

---

registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section. The provisions of this subsection shall not apply to such claims as may be asserted under the Federal Rules of Civil Procedure by third party complaint, cross-claim, or counterclaim.

8. Pub.L. No. 89–506, § 2(a), 80 Stat. 306 (1966) (codified at 28 U.S.C. § 2675(a) (1982)).

9. See S.Rep. No. 1327, 89th Cong., 2d Sess. 1–3, *reprinted in* [1966] U.S.Code Cong. & Admin. News 2515, 2515–2517. For discussion of the 1966 amendments, see Part IIIB(1) *infra*.

10. 28 U.S.C. § 2675(a) (1982) (text reproduced *supra* note 7).

11. See notes 107–110 *infra* and accompanying text. 28 U.S.C. § 2672 (1982) provides:

The head of each Federal agency or his designee, in accordance with regulations prescribed by the Attorney General, may consider, ascertain, adjust, determine, compromise, and settle any claim for money damages against the United States for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the agency while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred: *Provided,* That any award, compromise, or settlement in excess of $25,000 shall be effected only with the prior written approval of the Attorney General or his designee.

Regulations governing settlement procedure are set forth at 28 C.F.R. §§ 14.1–14.11 (1985).

12. See note 106 *infra* and accompanying text.

ing and settling 766 cases which were brought against GAF by persons injured through contact with asbestos.[13] GAF claims that it is entitled to indemnity, contribution, or apportionment against the United States on the ground that the United States required the company to use thermal insulation products containing asbestos in the construction and repair of ships and in work at government and contract shipyards—even though, GAF alleges, the Government was aware of the health hazards posed by asbestos when it issued the requirements. In consequence of the suits against it, GAF has sustained damages amounting to $3,554,494.99—$2,050,369.71 of which constitutes amounts paid in settlement of the underlying claims and $1,504,-125.28 of which represents costs incurred in defending those claims.[14]

Prior to the commencement of its lawsuit in the District Court, GAF presented its claim pursuant to Section 2675(a).[15] GAF filed its presentment on several "Standard Form 95's" a form prescribed by the Justice Department for the presentation of claims.[16] Although they differ in some minor respects, GAF's submissions on these forms typically included the following information. Each form names GAF as the claimant and states a total damage claim, aggregating damages for the underlying claims covered by that particular Standard Form 95. The remainder of the form is completed by means of references to attached exhibits. Generally, four exhibits accompanied each form. Exhibit A listed the federal agencies to which the claim was presented.[17] Exhibit B stated a total damage claim for that Standard Form 95 and summarized GAF's legal theories regarding the Government's liability for the class of underlying claims. In addition, the exhibit included a one-page description of each of the underlying claims, including the name of the underlying claimant, his or her social security number or date of birth, an employment history (employer, job site, and dates), the caption and docket number of the underlying case, and the disposition of the underlying claim, including a damage total for that particular claim (settlement or verdict, amount paid, and costs of defense).[18] Exhibit C provided a list of witnesses that would be likely to testify on behalf of GAF at any trial against the United States on this claim.[19] Finally, Exhibit D provided a list of GAF's insurance carriers, their addresses, and GAF's policy numbers.[20]

When after six months the United States had not made a final disposition of GAF's claim, GAF elected to treat the claim as denied and brought this suit in the District Court.[21]

---

13. See Complaint ¶ 2, *GAF Corp. v. United States*, Civ. No. 83–1322 (D.D.C.) (filed May 6, 1983), Appendix for Appellant GAF (GAF App.) 1. As appellants GAF, Eagle-Picher and Keene have each filed separately paginated appendices in this appeal, all appendix citations will include a prefix identifying the appellant by name.

14. Complaint, *supra* note 13, ¶ 6, GAF App. 3.

15. GAF presented its claim to eight federal agencies: the Department of Justice, the Department of the Navy, the Department of Defense, the General Services Administration, the Department of Health and Human Services, the Surgeon General of the United States, the Department of Labor, and the United States Public Health Service. Complaint, *supra* note 13, ¶ 8, GAF App. 3.

16. See 28 C.F.R. § 14.2(a) (1985). A Standard Form 95, titled "Claim for Damage, Injury or Death," is a two-sided form requesting the details of tort claims against the United States. It instructs claimants to describe the incident causing the injury, to state the amount of the claim in dollars, and to provide information regarding witnesses to the incident and insurance coverage.

17. See, e.g., Joint Appendix of Sample Administrative Notices of Claims Under the Federal Torts Claims Act of GAF Corporation, *GAF Corp. v. United States*, Civ. No. 83–1322 (D.D.C.) (filed Aug. 15, 1983), GAF App. 609, 646–647 [hereinafter cited as Sample Notice].

18. See, e.g., Sample Notice, *supra* note 17, GAF App. 609, 648–707.

19. See, e.g., *id.*, GAF App. 609, 623–624.

20. See, e.g., *id.*, GAF App. 609, 625–642.

21. Section 2675(a) provides that "[t]he failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant anytime thereafter, be

### 2. Eagle-Picher Industries

The history of the Eagle-Picher litigation substantially parallels that of GAF. Eagle-Picher presented its claim to seven federal agencies on July 27, 1983.[22] Its claim covered a total of 559 underlying claims for which Eagle-Picher sought indemnity or contribution from the United States.[23] Eagle-Picher had settled or satisfied judgments in these underlying cases, incurring expenses totalling $4,925,261.89.[24]

Eagle-Picher's presentment included a cover letter and one Standard Form 95, which generally referred the reader to attachments.[25] The first attachment described Eagle-Picher's accident insurance, as required under item 17 of Standard Form 95.[26] Another attachment provided a 42–page description of Eagle-Picher's claim against the United States, including its theories regarding the United States' liability.[27] This was followed by a schedule listing the agencies to which presentment of the claim had been made[28] and a schedule of damages, which listed each of the underlying claims by the last name of the claimant and the damages incurred.[29]

One final attachment was a statement referring the federal agency to ten boxes of materials included with the presentment. These boxes comprised Eagle-Picher's documentation of the underlying claims. For each underlying claim, Eagle-Picher included a two-page summary of the claim and all supporting documents, including settlement agreements and complaints in the underlying litigation. The two-page summary included the following information: the caption of the underlying lawsuit, the docket number, the name and address of the plaintiff, a description of the plaintiff's injury, the name and address of the executor if the injuries resulted in death, the date of death and cause of death if applicable, the shipyard or government facility where exposure occurred, the dates of exposure, the plaintiff's job title, the Eagle-Picher products that allegedly caused the injury, the amount paid in settlement or judgment and the date paid, all other costs associated with the defense, and a total of these costs.[30]

After six months passed without final disposition of its claim, Eagle-Picher brought suit in the District Court.[31]

### 3. Keene Corporation

In September, 1978, Keene presented a claim under the Federal Tort Claims Act to eight federal agencies.[32] Four months la-

---

deemed a final denial of the claim for purposes of this section." 28 U.S.C. § 2675(a) (1982).

**22.** The agencies were the Department of the Navy, the Department of Justice, the Department of Defense, the Department of Transportation, the General Services Administration, the Department of Health and Human Services, and the Department of Labor. *Eagle-Picher Indus. v. United States, supra* note 2, 608 F.Supp. at 1072. We note a discrepancy with Eagle-Picher's complaint, which dates presentment on July 27, 1982. See Complaint ¶ 3, *Eagle-Picher Indus. v. United States,* Civ. No. 84–1360 (D.D.C.) (filed May 1, 1984), Appendix for Appellant Eagle-Picher (E.P.App.) 6.

**23.** See Complaint, *supra* note 22, ¶ 1, E.P.App. 4–5.

**24.** See Complaint, *supra* note 22, ¶¶ 26–27, E.P.App. 15.

**25.** See, e.g., Letter from William J. Spriggs to Judge Advocate General of the Navy (July 27, 1983), Exhibit [A] to Memorandum of Law in Support of Defendant's Motion to Dismiss, *Eagle-Picher Indus. v. United States,* Civ. No. 84–1360 (D.D.C.) (filed Aug. 3, 1984), E.P.App. 104–

107 [hereinafter cited as Letter to Judge Advocate General].

**26.** Attachment I to Letter to Judge Advocate General, *supra* note 25, E.P.App. 108–110.

**27.** Summary of Claim Accompanying Letter to Judge Advocate General, *supra* note 25, E.P.App. 112–153.

**28.** Exhibit A to Summary of Claim Accompanying Letter to Judge Advocate General, supra note 25, E.P.App. 154.

**29.** Exhibit C to Summary of Claim Accompanying Letter to Judge Advocate General, *supra* note 25, E.P.App. 156–168.

**30.** See Exhibit to Summary of Claim Accompanying Letter to Judge Advocate General, *supra* note 25, E.P.App. 169–351.

**31.** *Eagle-Picher Indus. v. United States, supra* note 2.

**32.** They included the General Services Administration, the Department of Justice, the Judge

ter, Keene filed an amended notice of claim which listed approximately one thousand lawsuits that had been filed against Keene for which, Keene contended, the United States was primarily liable. The amended notice included a list of the lead plaintiffs and docket numbers of the underlying lawsuits and asserted that the United States was primarily liable for the claims, based upon (1) the Government's role as a supplier of asbestos, (2) the Government's role as an employer of the shipyard workers exposed to asbestos, (3) the Government's failure to take precautions or warn workers regarding the dangers of asbestos, (4) the Government's failure to make safety inspections of facilities using asbestos, and (5) "any other theory that will support a claim against the United States of America for Damages." [33] Keene did not attempt to link any of the underlying claims with one or more of these theories of liability. The amended notice apprised the Government of Keene's claim for damages, stating "[t]he present amount of Damages [for which the United States is liable to Keene] is the sum of $1,088,135;" it then immediately qualified: "This sum certain does not include other Damages of which Keene is not presently aware." Subsequently, the amended notice again asserted "that the United States of America is indebted to Keene for Damages in the sum of $1,088,-135 and in an additional amount yet to be ascertained." [34]

Keene brought suit against the United States in the Southern District of New York to collect this claim. [35] The United States moved for dismissal on the ground that the court lacked subject-matter jurisdiction under the Federal Tort Claims Act due to Keene's failure to satisfy the presentment requirement of Section 2675(a). The District Court ultimately agreed with the Government and dismissed Keene's suit on the ground, among others, that Keene's presentment was deficient under Section 2675(a). [36]

The District Court noted two deficiencies in Keene's presentment. The court recognized the well-established rule that a proper presentment must place a specific dollar amount upon the claim, [37] and noted that Keene's presentment failed to do so in two respects. First, Keene's claim for "an additional amount yet to be ascertained" rendered the amount of the claim uncertain. Second, even if the court were to ignore this reservation as to future claims, the District Court held Keene's presentment inadequate because it did not particularize the damages requested for each of the underlying lawsuits. [38]

The second ground on which the District Court held Keene's amended notice deficient was that it failed to provide the Government with sufficient information to evaluate the claim and choose between settlement and litigation. [39] Keene had failed to respond to the Government's request for specific information regarding each of the underlying claims. Observing that the Government should not be expected to settle on an all-or-nothing basis, nor to sift through the records of the individual lawsuits filed against Keene, [40] the District Court held that the deficiencies of Keene's presentment warranted dismissal of the suit.

The Second Circuit affirmed the dismissal of Keene's lawsuit (*Keene I*), [41] holding that Keene's presentment was defective

---

Advocate General of the Army, the Department of Health, Education and Welfare, the Surgeon General, the Department of Defense, the Department of Labor, and the United States Public Health Service. See *Keene Corp. v. United States, supra* note 3, 700 F.2d at 840 n. 4.

33. *Id.* at 840.

34. *Id.* at 841.

35. *Keene Corp. v. United States,* No. 80 Civ. 401 (S.D.N.Y. Sept. 30, 1981) (opinion), Appendix for Appellant Keene (K.App.) 48–70.

36. *Keene Corp. v. United States, supra* note 35, at 12, K.App. 60.

37. *Id.* at 9, K.App. 57.

38. *Id.* at 10, K.App. 58.

39. *Id.* at 11, K.App. 59.

40. *Id.* at 12, K.App. 60.

41. *Keene Corp. v. United States, supra* note 3, [hereinafter cited as *Keene I* ].

under Section 2675(a) for substantially the same reasons cited by the District Court. In particular, the Second Circuit held that the presentment failed to meet the sum-certain requirement, both because the claim included the reservation for "an additional amount yet to be ascertained," and because the damage total was not disaggregated to present a sum certain for the amounts sought in indemnification or contribution for each of the underlying claims.[42] Moreover, the court held, the presentment was deficient because it failed to provide sufficient information regarding the nature and merits of each of the underlying claims for the Government to evaluate its potential liability. This burden, the court held, is on the claimant, and is not met by providing the Government with the docket numbers of the underlying lawsuits or by relying on the Government's general familiarity with asbestos litigation.[43]

On October 1, 1981, after the District Court's opinion was filed but before the Second Circuit's, Keene presented the same federal agencies with a new notice of claim. It is this notice of claim which is at issue in the instant case. The 1981 notice consists

of one Standard Form 95 with several attachments, and is similar to the earlier notice in all but a few respects.[44] The 1981 notice seeks recovery in the amount of $14,878,850 without referring to additional amounts yet to be ascertained; it covers 9,822 underlying lawsuits against Keene.[45] Of the 9,822 underlying suits, approximately 1,700 cases were listed as settled with the specific settlement amount specified, and another 202 were listed as dismissed or otherwise resolved.[46] The only other difference between the notices—apart from the number of underlying claims and amounts claimed in recovery—lies in several additional schedules, appended to the 1981 notice, listing Keene's insurance carriers and policy deductibles, and documenting amounts paid in settlements and judgments for those claims against Keene then resolved.[47] Keene filed suit in the United States District Court for the District of Columbia to collect the claim represented by this presentment (*Keene II*).[48]

### B. The District Court's Decisions

The District Court dismissed each of these cases for failure to make a present-

---

**42.** 700 F.2d at 842.

**43.** *Id.*

**44.** For example, both the 1979 and 1981 notices of claim provide information concerning the underlying claims against Keene by way of a computer printout whose format is similar. The printouts each list the plaintiff's name, jurisdiction in which the complaint was served, date of service, and general and punitive damages alleged. The printout in the 1979 notice has a column listing docket number and court, and another listing settlement date and amount, but the vast majority of spaces for entries is blank. The printouts of the 1981 notice rarely include the latter two columns. Rarely is information on settlement amounts provided, because, it appears, only a very few of the claims for which indemnification is sought have been finally resolved. Compare Amended Notice of Claim (undated), Attachment B to Declaration of Janice Griffin O'Reilly (executed Aug. 5, 1983) accompanying Defendant's Motion to Dismiss, *Keene Corp. v. United States*, Civ. No. 82–2120 (D.D.C.) (filed Aug. 5, 1983), K.App. 43, 103, with Keene Corporation's 1981 Notice of Claim, Schedule A, K.App. 552, 664 and *id.*, K.App. 889.

**45.** *Keene Corp. v. United States, supra* note 2, 591 F.Supp. at 1343. By contrast, Keene's com-

plaint refers to the fact that "[m]ore than 13,000 lawsuits ('underlying actions') have been commenced against Keene...." (Complaint ¶ 9, *Keene Corp. v. United States*, Civ. No. 82–2120 (D.D.C.) (filed July 28, 1982), K.App. 9. It nonetheless alleges the same amount of damages as does the 1981 notice. See *Keene Corp. v. United States, supra* note 2, 591 F.Supp. at 1343. Of course, any cases other than the 9,822 listed in Keene's 1981 notice are not at issue here because no presentment of these claims has been made.

**46.** *Id.* at 1343 n. 8.

**47.** *Id.* at 1343; Keene Corporation's 1981 Notice of Claim, Schedules B, C & D, K.App. 1070–1100. For a meticulous comparison of the two filings and complaints, see *Keene Corp. v. United States, supra* note 2, 591 F.Supp. at 1342–1343.

**48.** *Keene Corp. v. United States, supra* note 2 [hereinafter cited as *Keene II*]. Keene stated that it filed this lawsuit in the District of Columbia rather than in New York because the District Court in New York noted in its opinion that Keene's claims against the United States resulted from actions taken in Washington, D.C. and because most, if not all, of the relevant evidence was located in Washington. See 591 F.Supp. at 1341 n. 2.

ment in accordance with Section 2675(a), in each instance relying on the analysis of the Second Circuit in *Keene I*. The District Court's rationale for applying *Keene I* differed across the cases, however. In *Eagle-Picher Industries* and *GAF Corp*, the District Court looked upon *Keene I* as persuasive authority on the requirements of a proper presentment involving multiple underlying claims.[49] In *Keene II*, however, the District Court held that the doctrine of collateral estoppel compelled it to apply the Second Circuit's interpretation of the presentment requirement, as set forth in *Keene I*.[50]

In *GAF*,[51] the District Court held the presentment at issue deficient, in that it failed to give the Government sufficient notice of the factual and legal background of the underlying claims for which indemnification was sought.[52] The District Court held as a matter of "common sense" that more information is required when presenting an "omnibus" claim representing hundreds of underlying claims than when presenting a claim involving merely one underlying incident.[53] The Second Circuit's decision in *Keene I* provided the most pertinent construction of the presentment requirement, because it, alone among appellate rulings, dealt with the presentment of an omnibus claim.[54] Applying these standards, the court held that GAF's presentment failed to give the agencies sufficient notice because, instead of ascribing particular legal theories of the Government's liability to each underlying claim, GAF simply attached to its claim a list of five acts or omissions, pertinent to the group as a whole.[55] The District Court also noted shortcomings in GAF's presentment regarding the factual background of the underlying claims. The court pointed to several instances of missing information in the case histories which GAF submitted with its presentment; for example, the court noted that several case summaries lacked social security numbers or dates of birth.[56] It stressed that for some of the underlying claimants either no employer was listed or the entry was ambiguous—such as "[n]umerous insulation contractors throughout the country"—or no job sites were specified— for example, "[v]arious locations in the country"—and in view of this and other missing information, the court concluded that "[i]t is impossible for the government to investigate the claims...."[57]

In *Eagle-Picher*,[58] the District Court identified many of the same deficiencies in Eagle-Picher's presentment. As in *GAF*, the court found Eagle-Picher's presentment to be deficient due to gaps in the case summaries of the underlying claims. In the court's view, gaps in the entries and answers couched in generic rather than particular terms—such as "shipyard" or "U.S. Army" as the facility where exposure occurred, or "insulation" as the job title— rendered the presentment "virtually useless."[59] In dismissing Eagle-Picher's presentment, the court placed special emphasis on the claimant's failure to ascribe particular legal theories to each of the underlying claims, in accordance with the requirements of *Keene I*.[60] In its view, Ea-

---

**49.** See *GAF Corp. v. United States, supra* note 2, 593 F.Supp. at 709; see also *Eagle-Picher Indus. v. United States, supra* note 2, 608 F.Supp. at 1074–1075.

**50.** See *Keene II, supra* note 2, 591 F.Supp. at 1344–1348.

**51.** *Supra* note 2.

**52.** 593 F.Supp. at 709–710.

**53.** *Id.* at 709.

**54.** *Id.* ("of greatest use to this court in determining the adequacy of GAF's notice are the standards set forth in *Keene* ").

**55.** *Id.* at 710. The District Court noted that "[l]isting acts or omissions that allegedly form the basis for the government's liability, and then indiscriminately attaching the entire list to every underlying claim, is little better than providing no list at all." *Id.*

**56.** *Id.* at 707.

**57.** *Id.* at 709.

**58.** *Supra* note 2.

**59.** 608 F.Supp. at 1075.

**60.** *Id.* at 1075–1076.

gle-Picher's presentment was inadequate because it set out six causes of action on which it contended the Government became liable for the group of claims as a whole.

In *Keene II*,[61] the District Court again applied the *Keene I* presentment standard, but for wholly different reasons. In *GAF* and *Eagle-Picher*, the court looked to *Keene I* as authority particularly relevant to the standards governing presentment of omnibus claims. In *Keene II*, however, the District Court held that principles of collateral estoppel bound it to apply the presentment standard set forth by the Second Circuit in *Keene I*.

The District Court noted first that principles of collateral estoppel, and not res judicata, would apply in the case before it. Res judicata, it observed, operates to bar relitigation of the same cause of action where there has been a prior judgment on the merits;[62] by contrast, where a suit is dismissed without reaching a judgment on the merits, as a dismissal for lack of jurisdiction, principles of collateral estoppel, having a lesser preclusive effect, would apply. Principles of collateral estoppel allow a new suit on the merits but preclude relitigation of " 'those issues [which] were conclusively determined in a prior action.' "[63] Thus, while Keene was free to litigate its claims for indemnification and contribution, it was barred from relitigating issues "actually litigated and necessary to the holding in *Keene I*."[64] The jurisdictional adequacy of Keene's claim was thus to be judged by the standard set forth by the Second Circuit in *Keene I*.

In particular, the District Court identified three legal issues decided by the Sec-

ond Circuit in *Keene I* that would control the present litigation as a matter of collateral estoppel:[65] (1) that a proper presentment requires damages to be stated in a "sum certain"; (2) that in claims for indemnification the "sum certain" must be disaggregated to reflect separately each underlying claim; and (3) that a presentment must provide the Government with sufficient information, regarding the nature and merits of the claim, ascribing specific legal theories of the Government's liability to each underlying claim.[66] The District Court ultimately held that because Keene's new presentment failed both to give definite damage amounts for each of the underlying claims and to provide a specific legal theory of governmental liability for each underlying claim, it was an insufficient presentment under Section 2675(a).[67]

Keene did raise one argument concerning the sufficiency of its presentment in this circuit that was not raised in *Keene I*. It contended that, because the Government failed to respond to its presentment within the six-month period mandated by statute, the claim should be deemed denied as a matter of law, and Keene allowed to proceed with its suit, notwithstanding the Government's objections to the adequacy of its presentment.[68] Characterizing this as a claim of waiver, the District Court rejected the argument, reasoning that the administrative filing requirements of Section 2675 are jurisdictional in nature, and as such cannot be waived; if Keene's presentment were insufficient, the court lacked subject-matter jurisdiction over Keene's claim,

---

**61.** *Supra* note 2.

**62.** 591 F.Supp. at 1346.

**63.** *Id.* at 1345 (quoting *United States v. Stauffer Chem. Co.*, 464 U.S. 165, 171, 104 S.Ct. 575, 578, 78 L.Ed.2d 388, 393 (1974)).

**64.** *Keene II, supra* note 2, 591 F.Supp. at 1346 (citing *United States v. Stauffer Chem. Co., supra* note 63).

**65.** The District Court noted several other legal rulings in *Keene I* having preclusive effect that are not at issue here.

**66.** 591 F.Supp. at 1347.

**67.** *Id.* at 1348.

**68.** Keene relied on the terms of § 2675(a), which provides in relevant part:

> The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

28 U.S.C. § 2675(a) (1982).

whether or not the Government objected to its sufficiency.[69]

### III. ANALYSIS

In view of the differing posture of the cases consolidated in this appeal, we find separate disposition of them appropriate. In *Keene II*, we uphold the District Court's ruling that Keene is precluded from relitigating the standards of proper presentment set forth by the Second Circuit in *Keene I*, and that judged by these standards, its presentment is deficient. We further reject Keene's attempt to claim jurisdiction on the basis of the Government's failure to object to the adequacy of Keene's 1981 notice of claim. Accordingly, we affirm the District Court's order in No. 84–5693 dismissing Keene's suit.

With respect to the *GAF* and *Eagle-Picher* appeals, Nos. 84–5638 and 85–5655, however, we are not bound to apply the presentment standard set forth by the Second Circuit in *Keene I* and relied upon by the District Court. We instead adopt a less stringent standard by which to judge the jurisdictional sufficiency of presentments, one we believe better to effectuate Congress' intentions in adding the presentment requirement to the Act. Applying this standard, we find that the presentments made by GAF and Eagle-Picher are indeed adequate to meet the jurisdictional requirements of Section 2675(a). Accordingly, we reverse the District Court in Nos. 84–5638

### A. *Keene II*

In order to evaluate Keene's claims in this appeal, it is necessary first to ascertain the effect of the Second Circuit's decision in *Keene I*. Although the Second Circuit never reached the merits of Keene's claims against the United States, it did affirm dismissal of the case on jurisdictional grounds. This judgment has preclusive effect, for "[t]he principles of *res judicata* apply to questions of jurisdiction as well as to other issues." [70] The task before us is to determine the exact contours of the preclusion worked by *Keene I*.

■ It is ordinarily the case that a judgment dismissing an action for lack of jurisdiction will have no preclusive effect on the cause of action originally raised. Rule 41 of the Federal Rules of Civil Procedure expressly provides that a dismissal for lack of jurisdiction will not "operat[e] as an adjudication on the merits." [71] The judgment ordering dismissal, will, however, have preclusive effect as to matters actually adjudicated; it will, for example, preclude relitigation of the precise issue of jurisdiction that led to the initial dismissal.[72] A claim of jurisdiction is not precluded if, however, in the interim subsequent to the initial dismissal there are developments tending to "cure" the jurisdictional defi-

and 85–5655, and remand for consideration on the merits.

---

69. *Keene II, supra* note 2, 591 F.Supp. at 1344.

70. *American Sur. Co. v. Baldwin*, 287 U.S. 156, 166, 53 S.Ct. 98, 101, 77 L.Ed. 231, 238 (1932). Accord, *Underwriters Nat'l Assurance Co. v. North Carolina Guar. Ass'n*, 455 U.S. 691, 706, 102 S.Ct. 1357, 1367, 71 L.Ed.2d 558, 571 (1982).

71. Fed.R.Civ.P. 41(b). See *Costello v. United States*, 365 U.S. 265, 285–286, 81 S.Ct. 534, 544–545, 5 L.Ed.2d 551, 564–565 (1961) (discussing relation of Rule 41(b) and common law of judgments); see generally 1B J. Moore, J. Lucas & T. Currier, *Moore's Federal Practice* ¶ 0.405[5], at 228 (2d ed. 1984); 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure: Jurisdiction* § 4436, at 338 (1981).

72. "Although the dismissal of a complaint for lack of jurisdiction does not adjudicate the mer-

it [*sic*] so as to make the case *res judicata* on the substance of the asserted claim, it does adjudicate the court's jurisdiction, and a second complaint cannot command a second consideration of the same jurisdictional claims." *Boone v. Kurtz*, 617 F.2d 435, 436 (5th Cir.1980) (per curiam).

On the types of issue preclusion arising from dismissal for want of jurisdiction, see, e.g., *Oglala Sioux Tribe v. Homestake Mining Co.*, 722 F.2d 1407, 1411–1413 (8th Cir.1983) (dismissal of suit for lack of federal subject-matter jurisdiction precludes relitigation of the same issue of subject-matter jurisdiction in second federal suit on same claim); *Eaton v. Weaver Mfg. Co.*, 582 F.2d 1250 (10th Cir.1978) (prior state court determination of lack of personal jurisdiction precludes relitigation of issue in subsequent federal litigation on same cause of action) (no additional jurisdictional facts pleaded in second action).

ciency identified in the first suit.[73] This so-called "curable defect" exception applies "where a 'precondition requisite' to the court's proceeding with the original suit was not alleged or proven, and is supplied in the second suit." [74]

■ While the curable-defect exception allows relitigation of a claim of jurisdiction, it does not allow for relitigation of the standards by which jurisdiction is ascertained. Where there is mutuality of parties, the party alleging jurisdiction in a second action will be precluded from relitigating any issue of fact or law determined against it in the first action which it had full opportunity to litigate.[75] The preclusive effect of the first jurisdictional judgment is limited to matters actually raised and necessarily decided; it does not extend

to matters that could have been raised, as would the preclusive effect of a judgment on the merits.[76]

■ Turning to the case before us, it appears that the Second Circuit's decision in *Keene I* does not preclude Keene's effort to establish federal jurisdiction in this circuit for its tort claim against the United States. The judgment in *Keene I* does, however, prevent it from relitigating the standards for proper presentment under Section 2675(a). The jurisdictional requirements for suits under the Federal Tort Claims Act were decided by the Second Circuit in *Keene I*, a prior action involving the same parties and substantially the same claim, and, as the District Court prop-

---

**73.** See, e.g., *Costello v. United States, supra* note 71, 365 U.S. at 284–288, 81 S.Ct. at 544–546, 5 L.Ed.2d at 564–566 (Government filing of affidavit of good cause in denaturalization proceeding); *Martin v. Department of Mental Hygiene*, 588 F.2d 371, 373 n. 3 (2d Cir.1978) (per curiam) (proper service of process); *Madden v. Perry*, 264 F.2d 169, 175 (7th Cir.), *cert. denied*, 360 U.S. 931, 79 S.Ct. 1450, 3 L.Ed.2d 1544 (1959) (conduct of a preliminary investigation statutorily required as condition precedent to suit). See 1B J. Moore, J. Lucas & T. Currier, *supra* note 71, ¶ 0.409[.1–2], at 308–309 & 308 n. 8 (effect of dismissal for failure to satisfy statutory precondition to filing suit).

**74.** *Dozier v. Ford Motor Co.*, 227 U.S.App.D.C. 1, 4, 702 F.2d 1189, 1192 (1983). Compare *id.* (jurisdictional deficiency must be remedied by occurrences subsequent to original dismissal) (limiting "curable defects" exception to post-transactional incidents of jurisdiction) with *Mann v. Merrill Lynch, Pierce, Fenner & Smith*, 488 F.2d 75, 76 (5th Cir.1973) (dismissal of suit for failure to allege diversity is no bar to new suit properly pleading diversity sufficient to establish jurisdiction).

**75.** The *res judicata* effects of a prior judgment dismissing for lack of jurisdiction have variously been discussed in terms of issue preclusion and estoppel. See, e.g., *Restatement (Second) of Judgments* § 20 Reporter's Note to Comment b (1980). For examples of issue preclusion that may flow from a dismissal for lack of jurisdiction, see, e.g., *Dozier v. Ford Motor Co., supra* note 74, 227 U.S.App.D.C. at 4–5, 702 F.2d at 1192–1193 (amount in controversy for diversity jurisdiction); *Roth v. McAllister Bros.*, 316 F.2d 143, 145 (2d Cir.1963) (fact of employment) ("a tribunal always possesses jurisdiction to deter-

mine its own jurisdiction, and any fact upon which that decision is grounded may serve as the basis for an estoppel by judgment in any later action"); *Oglala Sioux Tribe v. Homestake Mining Co., supra* note 72, 722 F.2d at 1412 (constitutionality of statute); see C. Wright, A. Miller & E. Cooper, *supra* note 71, § 4436, at 340–341.

**76.** *Segal v. American Tel. & Tel. Co.*, 606 F.2d 842, 844–845 (9th Cir.1979) (dismissal for lack of jurisdiction results in issue preclusion, which, unlike bar, forecloses litigation only of those issues of fact or law that were actually litigated and necessarily decided by a final judgment between the parties). See *Dozier v. Ford Motor Co., supra* note 74, 227 U.S.App.D.C. at 3, 702 F.2d at 1191 (prior dismissal for failure to meet amount in controversy required for diversity jurisdiction will bar second suit, "at least to the extent appellant seeks to base jurisdiction on § 1332"). It has been observed:

It is tempting to create a special form of claim preclusion that would require all theories of jurisdiction to be advanced in the first action or lost. This temptation probably should be resisted. If there is in fact a basis for jurisdiction, and the claim remains open for an action in some court, it seems better to allow resort to the available jurisdiction.

18 C. Wright, A. Miller & E. Cooper, *supra* note 71, § 4436, at 341 n. 9. But cf. *Redwood v. Council of the District of Columbia*, 220 U.S.App.D.C. 113, 115, 679 F.2d 931, 933 (1982) (per curiam) (dismissal of suit for failure to state federal question bars suit on "essentially the same action two years later citing a *less* obvious basis for federal jurisdiction," where first judgment was never appealed) (emphasis in original).

erly ruled, it is not open to Keene to seek a new interpretation of them in this circuit.[77]

 Keene is, however, entitled to establish jurisdiction by filing a new presentment "curing" the deficiencies the Second Circuit identified in the first. This it has attempted to do by filing a new notice of claim. While the decision in *Keene I* pertained to a 1979 notice, the complaint upon which this action is based relied on a 1981 notice of claim, which purports to cure the deficiencies of the first. After a careful comparison of Keene's 1979 and 1981 notices and a painstaking review of the ruling in *Keene I*, the District Court determined that Keene had still failed to satisfy the requirements for proper presentment under Section 2675(a) of the Act.[78] Its determination seems to us unquestionably correct.

In rejecting Keene's 1979 notice of claim, the Second Circuit stated that adequate presentment would have to state a sum certain for the claim as a whole, and then allocate that amount to each of the underlying claims aggregated in the total claim for damages. Keene has stated a sum certain in its 1981 notice of claim, but it has not allocated damages to each of the underlying claims.[79] The Second Circuit further

---

**77.** There appear to be only two exceptions to the rules of issue preclusion which might entitle Keene to relitigate the standard for a jurisdictionally adequate presentment: one pertaining to prior judgments resting on unmixed questions of law and another pertaining to prior judgments resting on alternate and independent grounds. Neither, however, applies in this case.

The exception to preclusion rules for judgments resting on unmixed questions of law applies to "successive actions involving unrelated subject matter." *Montana v. United States,* 440 U.S. 147, 162, 99 S.Ct. 970, 978, 59 L.Ed.2d 210, 222 (1979). Whatever its scope and bearing, it is inapplicable to a case such as this, where the same parties are litigating successive actions involving the same issues. See *United States v. Stauffer Chem. Co., supra* note 63, 464 U.S. at 172, 104 S.Ct. at 579, 78 L.Ed.2d at 394 (exception for unmixed questions of law does not apply where Government seeks to litigate twice with the same party an issue arising in both cases from virtually identical facts). Cf. *Restatement (Second) of Judgments* § 28 comment b (1982) ("[w]hen the claims in two separate actions between the same parties are the same or are closely related ... it is not ordinarily necessary to characterize an issue as one of fact or law for purposes of issue preclusion ...").

The exception to preclusion rules recognized by some courts where a prior judgment rests on alternate and independent grounds is similarly inapposite here. See generally 1B J. Moore, J. Lucas & T. Currier, *supra* note 71, ¶ 0.443[5.–2] at 789–793; 18 C. Wright, A. Miller & E. Cooper, *supra* note 71, § 4421, at 203–209 (reviewing general scope of, and debate over, exception). The portions of *Keene I* relevant to this appeal are not alternate and independent grounds for the decision in that case.

In this appeal, Keene focuses on our jurisdiction to hear its claims under the Federal Tort Claims Act; it reiterates none of the ancillary jurisdictional arguments raised in the Second Circuit and before the District Court (e.g., that jurisdiction exists in admiralty, or under the Federal Employees Compensation Act, 5 U.S.C. §§ 8101–8193 (1982), see *Keene II, supra* note 2, 591 F.Supp. at 1348–1349). See Brief for Appellant Keene Corp. at 31–59. Thus the only portions of *Keene I* relevant to this appeal are those pertaining to the requirements for proper presentment under the Federal Torts Claims Act. All were necessarily decided by the Second Circuit in *Keene I* when it dismissed Keene's complaint on grounds of failure to make a proper presentment, as all are elements of *one* standard. Even if we were to characterize the requirements for presentment set forth in *Keene II* as alternate and independent grounds for dismissal of Keene's complaint, the preclusion exception still remains inapposite. The rational underlying the exception cautions against giving preclusive effect to multiple rulings that a party may lack full incentive to appeal. Here, Keene appealed the initial trial court dismissal of its complaint and the Second Circuit gave full consideration to all aspects of the presentment requirement on which dismissal was predicated. See *Dozier v. Ford Motor Co., supra* note 74, 227 U.S.App.D.C. at 5–6, 702 F.2d at 1193–1194 (recognizing preclusive effect of trial court judgment resting on alternate grounds, where losing party pursued an appeal, and appellate ruling explicitly affirmed decision below on both grounds); *Restatement (Second) of Judgments,* § 21 comment i (1982) (same).

**78.** See *Keene II, supra* note 2, 591 F.Supp. at 1342–1343 (comparison of 1979 and 1981 notices of claim); *id.* at 1346–1348 (analysis of Second Circuit's rulings in *Keene I* ).

**79.** Because only a portion of the claims for which Keene claimed contribution or indemnification had reached settlement at the point Keene filed its 1981 notice, information on amounts paid in settlement was provided for some but not all of the underlying claims. See note 44 *supra* and text *supra* at note 47. No effort was made to break down insurance and defense costs attributable to the underlying claims. See Keene Corporation's 1981 Notice of Claim, Rider 3, K.App. 558–560.

required Keene to provide additional factual background and a specific theory of liability for each of the underlying claims, or for meaningful groups of them, in order for the agencies to undertake review of its claim for indemnification. This the 1981 notice of claim fails to do.[80] The additional information provided by the 1981 notice—regarding, for example, Keene's insurance policies—while helpful, surely does not satisfy the requirements for presentment set forth in *Keene I*, either in letter or spirit. We therefore affirm the District Court in its ruling that Keene has failed to make an adequate presentment in accordance with Section 2675(a).

In this case, Keene asserts that federal courts have jurisdiction to hear its complaint on one other ground, neither argued nor addressed in *Keene I*.[81] While the Government objected within six months to the adequacy of Keene's 1979 notice, it made no such objection to the 1981 notice until almost eight months after the claim had been filed.[82] Keene argues that in view of the Government's failure to make timely objection, its presentment should be deemed to have been denied as a matter of law, thus giving rise to jurisdiction under the Act notwithstanding the Government's objections to the adequacy of its presentment. In support of this argument, Keene invokes Section 2675(a) of the Act, which provides in material part:

> The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.[83]

Thus, according to Keene, the Government's failure to object, or to respond in any fashion to its presentment until *after* the running of the six-month period, entitled Keene to treat its claim as denied as a matter of law, and file suit, consistently with the jurisdictional prerequisites of Section 2675(a).

Characterizing Keene's argument as a claim of waiver, the District Court rejected it, reasoning that because the administrative filing requirements of the Act are jurisdictional in nature, they can not be waived by action of the parties. In any event, the court observed, Section 2675(a) provides the claimant with the option of filing suit after six months, on the premise that the notice originally provided the agency complies with the requirements of the Act.[84]

■ These are persuasive grounds for rejecting Keene's argument. We decline, however, to hold that in no circumstances could the Government's failure to make timely objection to the adequacy of a claimant's presentment constitute a *de jure* denial of that presentment establishing jurisdiction to sue under the Act. Congress clearly contemplated that the administrative filing procedure mandated by Section 2675(a) would impede claimant access to the courts by a period no greater than six months: it provided that the agencies are "to make *final disposition* of a claim within six months," [85] or the claimant would be entitled to treat the claim as denied as a matter of law. Where a claimant makes a reasonable effort to notify federal agencies of a claim in accordance with the administrative filing procedures of Section 2675(a), and the Government takes no action to apprise the claimant of objections to the presentment within the six-month time period it has to make final disposition of the claim, it seems to us in the very least, that such delay qualifies the force of the Government's objections when it subsequently moves for dismissal on the ground that the

---

**80.** The 1981 notice appears to offer only a one-sentence summary of Keene's theory of the Government's liability, provided in answer to question 11 of the Standard Form 95. See Keene Corporation's 1981 Notice of Claim, K.App. 552.

**81.** The judgment in *Keene I* thus exerts no preclusive effect as to this claim of jurisdiction. See note 76 *supra* and accompanying text.

**82.** *Keene II, supra* note 2, 591 F.Supp. at 1344.

**83.** 28 U.S.C. § 2675(a) (1982).

**84.** *Keene II, supra* note 2, 591 F.Supp. at 1344.

**85.** *Id.* (emphasis added).

presentment was inadequate for its investigative purposes. If the Government objects to the adequacy of a claimant's presentment, it should provide timely notice to the claimant so that the claimant may, if it wishes, cure its presentment in an expeditious fashion.[86]

Whatever the merits of Keene's argument, it has, however, little force on the facts of this case. Keene filed its 1981 notice of claim in the interim subsequent to the District Court's ruling on its 1979 notice of claim in *Keene I*, but prior to the Second Circuit's decision in that case.[87] It was amply apprised of the Government's objections to its 1979 notice, and, more generally, of the extent and character of the notice the Government sought in presentment of Keene's claim for indemnification. Keene may have disagreed with the Government's demands, but it flies in the face of the facts to say it lacked notice of them. If there are in fact circumstances in which the Government's failure to object in timely fashion to the adequacy of a presentment may be taken as a *de jure* denial of the claim, they are not the circumstances of this case. Accordingly, we affirm the District Court's order dismissing No. 84–5693.

### B. *GAF and Eagle-Picher*

The appeals in *GAF*, No. 84–5638, and *Eagle-Picher*, No. 85–5655, reach us, however, in a different posture. The District Court, following the Second Circuit's decision in *Keene I*, dismissed these cases on the ground that the presentments

---

**86.** To dub Keene's argument, as the District Court did, a simple claim of waiver is to dismiss it by way of conclusory characterization. As the presentment requirement is jurisdictional in nature, it cannot be waived by action of the parties. By contrast, Keene's argument is, we think, somewhat more substantial. When Congress made filing a presentment a jurisdictional prerequisite to suit, it simultaneously defined the terms in which jurisdiction could be established: by agency denial of the claim, in fact or law. See 28 U.S.C. § 2675(a) (1982). Keene argues that the Government's failure to object to the adequacy of a presentment within the period it is statutorily entitled to make final disposition of a claim operates as a denial of that claim as a matter of law, establishing the claimant's jurisdiction to sue. Keene claims jurisdiction, not by waiver, but as a matter of statutory entitlement. Thus, the relevant question is not whether the parties may waive the jurisdictional requirements of the Act, but whether Congress intended such agency inaction to establish jurisdiction within the meaning of § 2675(a). There are, we believe, good reasons to find it did.

Two values are at stake here: on the one hand, the efficacy of the filing requirement Congress imposed in the hope of promoting settlement of claims, and, on the other, the claimant's right to sue under the Act. As we develop in Part III(B)(1) *infra*, Congress fashioned § 2675(a) with both of these commitments in mind. In making presentment a precondition to suit, it rejected any version of the filing requirement that would suspend claimant access to the courts for more than six months. See text *infra* at note 95. If a claimant makes a reasonable effort to notify the Government of a claim, and the Government fails to object to the adequacy of notice provided within the six-month period statutorily afforded to make final disposition of that claim, objections which might prove legitimate when raised timely would seem to lose weight. To recognize these belated objections to the adequacy of notice provided is to promote the agencies' opportunity to make an offer of settlement at the expense of the claimant's right of suit, suspending that right of suit for a period considerably longer than Congress thought appropriate in drafting § 2675(a). Insofar as § 2675(a) reflects a commitment to preserve two processes of claims resolution, and not merely one, there appear to be strong grounds for treating an agency's failure to make timely objection to the adequacy of a presentment as an instance of agency inaction, giving rise to jurisdiction within the meaning of § 2675(a).

Because on the facts of this case we are not faced with such an instance of agency inaction, see text *infra* at note 87, we need not reach this question today, reserving it until the proper occasion for decision presents itself. Cf. *Adams v. United States*, 622 F.2d 197 (5th Cir.1980) (per curiam) (intimating no opinion as to jurisdictional effect, if any, of claimant's refusal to comply with agency's reasonable request for supplemental information to clarify inadequate notice of claim). Of course, our comments have no bearing on those cases where a claimant neglects to file a presentment with the agencies before initiating suit. In these circumstances, courts lack jurisdiction to hear the claim, whether or not the Government raises jurisdictional objections. Cf. *Hohri v. United States*, 251 U.S.App.D.C. 145, 163–164, 782 F.2d 227, 245–246 (1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 454, 93 L.Ed.2d 401; *Henderson v. United States*, 785 F.2d 121 (4th Cir.1986) (failure to file claim with agency under § 2675(a) bars suit).

**87.** *Keene II, supra* note 2, 591 F.Supp. at 1342.

rendered were inadequate to establish jurisdiction. With due deference to the Second Circuit, we conclude that *Keene I* interprets the Act's jurisdictional requirements too stringently. In order to establish jurisdiction under the Act, a claimant must provide the agency with notice of a claim, not substantiate it to the agency's satisfaction. In adding the presentment requirement to the Act, Congress sought to facilitate claims settlement. It did not shift ultimate responsibility for the adjudication of federal liability from the courts to the agencies, nor did it provide the agencies with leverage to impede claimant access to the courts.

### 1. The Jurisdictional Requirement of Presentment

The presentment requirement of Section 2675(a) was added to the Federal Tort Claims Act in 1966.[88] Prior to this time, the Act provided for administrative settlement of claims only when valued at $2,500 or less; claimants seeking damages in greater amounts were required to file suit in court.[89] Recognizing that the Act's procedures resulted in the filing of large numbers of suits which might be settled out of court, Congress amended the Act in 1966 to remove statutory impediments to claim settlement,[90] and to impose upon claimants the responsibility of presenting a claim to the agency as a precondition to filing suit. As the House and Senate Reports[91] describe

the purpose of the 1966 Amendments, the revised procedure was

> intended to ease court congestion and avoid unnecessary litigation, while making it possible for the Government to expedite the fair settlement of tort claims asserted against the United States. In accomplishing these purposes, the more expeditious procedures provided by this bill will have the effect of reducing the number of pending claims which may become stale because of the extended time required for their consideration. The committee observes that the improvements contemplated by the bill would not only benefit private litigants, but would also be beneficial to the courts, the agencies, and the Department of Justice itself.[92]

Congress never defined the presentment requirement it imposed upon claimants as a precondition to filing suit, but a fair understanding of the jurisdictional requirement imposed may be had by examining the statutory scheme Congress adopted and its statement of purposes in amending the Act. As a threshold matter, it should be observed that, in revising the procedure for filing claims, Congress manifested no interest whatsoever in restricting claimants' rights under the Federal Tort Claims Act or in restricting their access to the courts. To the contrary, Congress identified private litigants as the primary beneficiaries of the amendments.[93] The requirement of presentment it imposed on claimants was

**88.** Pub.L. No. 89–506, § 2(a), 80 Stat. 306 (1966) (codified at 28 U.S.C. § 2675(a) (1982)) (text reproduced *supra* at note 7).

**89.** See Pub.L. No. 86–238, § 1, 73 Stat. 471 (1959) (amended in 1966); see also S.Rep. No. 1327, *supra* note 9, at 2, *reprinted in* [1966] U.S.Code Cong. & Admin.News 2515, 2516.

**90.** S.Rep. No. 1327, *supra* note 9, at 2, *reprinted in* [1966] U.S.Code Cong. & Admin.News 2525, 2527 ("[t]he committee observes ... that under the present provisions of law, even if the agency finds that it is clearly liable and desires to settle the claim quickly in the interest of justice and fairness, it cannot do so if the claim is for more than $2,500"). In addition to eliminating the $2,500 limitation on administrative settlement, Congress simultaneously enlarged the authority of agencies to settle, without the approval of the Attorney General, for amounts up to $25,000. See Pub.L. No. 89–506, §§ 1, 9, 80 Stat. 306, 308

(1966) (codified at 28 U.S.C. § 2672 (1982)); S.Rep. No. 1327, *supra* note 9, at 4–6, *reprinted in* [1966] U.S.Code Cong. & Admin.News 2515, 2518–2520.

**91.** The report of the Senate Committee on the Judiciary, S.Rep. No. 1327, *supra* note 9, *reprinted in* [1966] U.S.Code Cong. & Admin.News 2515, adopts in material part the report of the House Committee on the Judiciary, H.R.Rep. No. 1532, 89th Cong., 2d Sess. (1966). Subsequent references to the committee reports are cited to the Senate Report.

**92.** S.Rep. No. 1327, *supra* note 9, at 2, *reprinted in* [1966] U.S.Code Cong. & Admin.News 2515, 2516.

**93.** See text *supra* at note 92.

solely for the purpose of expediting settlement of claims in those instances where settlement was appropriate. The determination of whether settlement or suit was the appropriate course of action in a given instance was one Congress left in the claimants' hands. Section 2675(a) provides that when a claim is denied by an agency, the claimant may elect to sue; similarly, failure of an agency to make final disposition of a claim within six months of filing entitles the claimant any time thereafter to treat the claim as denied and file suit.[94]

Not only did Congress leave the choice between settlement and suit in the ultimate control of the claimant; it fashioned the presentment process so as not unduly to delay that choice. The agencies were allowed six months, and only six months, to make *"final* disposition" of a claim before the option of filing suit returned to the claimant:

> [I]f the agency fails to act in 6 months, the claimant may at his option elect to regard this inaction as a final denial and proceed to file suit. It is obvious that there would be some difficult tort claims that cannot be processed and evaluated in this 6-month period. The great bulk of them, however, should be ready for decision within this period. In some cases where the agency does not reach a decision in 6 months, the claimant may feel that the agency is seeking to reach a fair decision. Under such circumstances, the claimant might not wish to break off negotiations and file suit. Therefore even though this 6-month period may prove insufficient in some instances, the

committee does not believe that this period ought to be enlarged to attempt to insure time for final decision on all claims.[95]

Congress thus carefully tailored the presentment process so as to suspend the claimant's prerogative to sue under the Act for a period no greater than six months; "[i]f a satisfactory arrangement cannot be reached in the matter, the claimant can simply do as he does today—file suit."[96]

In sum, the 1966 amendments reverse a prior statutory preference in favor of suit, adopting a procedural framework which recognizes settlement and suit as two methods of claims resolution under the Act. It compels claimants to present claims to the agencies for disposition by settlement; but it does not compel claimants to submit to disposition of their claims by settlement. Rather, it unequivocally reserves the claimant's right to seek adjudication of the Government's liability in court if, after six months time, the claimant is dissatisfied with the agencies' disposition of the claim.[97]

■■■ The presentment requirement takes meaning from the procedural framework established by the 1966 amendments. In mandating presentment of a claim, Congress instituted a procedure which *might* eventuate in settlement.[98] Presentment is mandatory; settlement is merely optional.[99] This distinction is crucial for courts called upon to determine their jurisdiction to hear claims under the Act. The requirement of presentment must not be construed to deprive claimants of the choice of forum for

---

94. See 28 U.S.C. § 2675(a) (1982).

95. S.Rep. No. 1327, *supra* note 9, at 5, *reprinted in* [1966] U.S.Code Cong. & Admin.News 2515, 2518–2519.

96. *Id.* at 6, *reprinted in* [1966] U.S.Code Cong. & Admin.News 2515, 2519–2520.

97. See *id.* at 8, *reprinted in* [1966] U.S.Code Cong. & Admin.News 2515, 2518 (final denial of presented claim "includes instances where partial approval of a claim results in an offer unacceptable to the claimant and rejected by him"). As this court held in *Odin v. United States,* 211 U.S.App.D.C. 209, 656 F.2d 798 (1981), the "Act explicitly vests the power of acceptance [of a settlement offer] in the *claimant,* and not in the

agency." *Id.* at 215, 656 F.2d at 804 (emphasis in original).

98. Claims are "to be presented to the appropriate agency for consideration and possible settlement before a court action [can] be instituted;" presentment of claims is "a prerequisite to suit." S.Rep. No. 1327, *supra* note 9, at 3, *reprinted in* [1966] U.S.Code Cong. & Admin.News 2515, 2517.

99. Accord, *Adams v. United States,* 615 F.2d 284, 291 (5th Cir.) ("Congress clearly did not deem settlement mandatory"), *clarified, reh'g denied,* 622 F.2d 197 (5th Cir.1980).

claims resolution carefully preserved by Congress in drafting the 1966 amendments.[100] In practical terms, this means we must distinguish between the presentment filing mandated by Section 2675(a) and the settlement procedures of Section 2672. Once we do so, it is apparent that the presentment requirement imposes on claimants a burden of notice, not substantiation, of claims. To conflate the mandatory presentment requirement of Section 2675(a) with the settlement procedures of Section 2672, and require claimants to substantiate claims for settlement purposes as a prerequisite to filing suit, is to compel compliance with settlement procedures contrary to congressional intent.[101]

The distinction we draw between notice of claims required for purposes of presentment and the type of substantiation of claims which might be required for settlement purposes finds ample support in the committee reports, where Congress repeatedly characterized presentment as a simple requirement of notice. The presentment requirement, it observed, was one having precedent in numerous municipal tort claims statutes requiring that cities be "given notice of an accident within a fixed time." [102] As the report observes "the purpose of this notice [is] 'to protect the municipality from the expense of needless litigation, give it an opportunity for investigation, and allow it to adjust differences and settle claims without suit.' " [103] In illustration, the report cites a section of the District of Columbia Code which requires claimants, as a condition to suit, to give "notice" by "present[ing] ... in writing a claim for money damages." [104] Not only did Congress repeatedly characterize presentment as a requirement of notice, but it clearly contemplated that the filing of a presentment would initiate a settlement procedure in which the agencies were to investigate claims.[105] In short, Congress did not impose on claimants the burden of substantiating their claims as part of the presentment process, it made a statutory precondition to filing suit.

█ Thus we hold, with the Ninth Circuit and the majority of appellate courts to have considered the question, that Section 2675(a) requires a claimant to file (1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum-certain damages claim.[106] Notice of an injury will

---

**100.** *Odin v. United States, supra* note 97, 211 U.S.App.D.C. at 217, 656 F.2d at 807.

**101.** Accord, *Adams v. United States, supra* note 99, 615 F.2d at 288 ("Congress' intent in enacting section 2675 is frustrated when the distinct functions of presenting notice and of engaging in settlement are confused in a way that impermissibly redefines the section 2675 notice requirement").

**102.** S.Rep. No. 1327, *supra* note 9, at 3, *reprinted in* [1966] U.S.Code Cong. & Admin.News 2515, 2517.

**103.** *Id.* at 4, *reprinted in* [1966] U.S.Code Cong. & Admin.News 2515, 2517 (quoting E. McQuillan, *Municipal Cooperations* § 53.153 (3d ed.)).

**104.** S.Rep. No. 1327, *supra* note 9, at 4, *reprinted in* [1966] U.S.Code Cong. & Admin.News 2515, 2517. The section of the Code cited by the report is D.C.Code Encycl. § 1–923 (1966). The elements of notice for purposes of claims presentment under this section are elsewhere defined as "the approximate time, place, and circumstances of the injury or damage." D.C. Code Encycl. § 12–309 (1966).

**105.** The expectation that agencies would conduct independent investigations of the claims

presented them is clearly reflected in the committee reports. See text *supra* at note 103; see also S.Rep. No. 1327, *supra* note 9, at 3, *reprinted in* [1966] U.S.Code Cong. & Admin.News 2515, 2517 ("[t]his [presentment] procedure would make it possible for the claim first to be considered by the agency whose employee's activity allegedly caused the damage. That agency would have the best information concerning the activity which gave rise to the claim"). The agencies' investigative responsibilities antedated the 1966 amendments and were in no respect altered by them. See *id.* at 5, *reprinted in* [1966] U.S.Code Cong. & Admin.News 2515, 2519 ("[t]he bill will not assign novel tasks to the agencies. They now investigate all accidents involving their employees, prepare litigation reports on all tort cases, suggest Government defenses to claims, and, at the request of the Department of Justice, comment on all settlement offers presented to the Department").

**106.** *Warren v. United States Dep't of Interior Bureau of Land Management,* 724 F.2d 776, 780 (9th Cir. *en banc* 1984). Accord, *Tucker v. United States Postal Serv.,* 676 F.2d 954, 959 (3d Cir.1982) (presentment requirement of § 2675(a) satisfied where "claimant (1) gives the agency written notice of his or her claim suffi-

enable the agency to investigate and ascertain the strength of a claim; the sum-certain statement of damages will enable it to determine whether settlement or negotiations to that end are desirable. A presentment of this character provides the agency all it needs, and all to which it is statutorily entitled, to make final disposition of the claim in accordance with Section 2675(a). Claimants who discharge this obligation of notice have satisfied the jurisdictional requirements of the Act, and, with the running of the six-month period Congress has provided the agencies to make final disposition of claims presented, are entitled to file suit.

■ The Department of Justice has promulgated regulations governing the presentment process [107] which it contends govern the sufficiency of notice for jurisdictional purposes.[108] Some circuits have sustained the Department in this regard.[109] Along with the Fifth, Sixth and Ninth Circuits, we hold that Congress has not del-

egated to the agencies the power to determine, by regulation, the jurisdiction of Article III courts under the Act.[110] The sufficiency of presentments for jurisdictional purposes remains a matter for courts to determine in light of the statutory framework. We do hold, however, that claimants providing the agencies notice of a claim need provide no more information than the regulations specify for the initial presentment of a claim: "an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain...." [111]

### 2. Satisfying the Jurisdictional Requirement of Presentment

In assessing the adequacy of the presentments made by GAF and Eagle-Picher, the District Court identified the correct legal standard to apply, reciting the two-pronged requirement of minimal notice we have identified above.[112] In neither case did the court view the sum-certain requirement as

cient to enable the agency to investigate and (2) places a value on his or her claim"); *Adams v. United States, supra* note 99, 615 F.2d at 289 (same); *Douglas v. United States,* 658 F.2d 445, 447 (6th Cir.1981) (same); *Charlton v. United States,* 743 F.2d 557, 559 (7th Cir.1984) (per curiam) ("sufficient notice to enable the agency to investigate the claim and the setting of a 'sum certain'"); *Bush v. United States,* 703 F.2d 491, 494 (11th Cir.1983) ("claimant (1) gives the agency written notice of his or her claim sufficient to enable the agency to investigate and (2) places a value on his or her claim").

**107.** See 28 C.F.R. §§ 14.1–14.11 (1985).

**108.** 28 C.F.R. § 14.2 (1985), captioned "Administrative claim; when presented," defines presentment "[f]or purposes of the provisions of 28 U.S.C. 2401(b) and 2672." 28 U.S.C. § 2401(b) states the Act's statute of limitations, whose period is measured in terms of presentment and final denial of claims under § 2675(a). 28 U.S.C. § 2672 governs settlement procedures under the Act. The remaining regulations of Part 14 are clearly intended to govern settlement procedures under 28 U.S.C. § 2672; several courts have held they provide standards for determining the jurisdictional sufficiency of presentments under § 2675(a) as well. See note 109 *infra.*

**109.** See *Pennsylvania v. National Ass'n of Flood Insurers,* 520 F.2d 11, 19–20 (3d Cir.1975) (requiring compliance with 28 C.F.R. §§ 14.2, 14.3,

14.4 for jurisdictional purposes); *Lunsford v. United States,* 570 F.2d 221, 225–227 (8th Cir. 1977) (requiring compliance with 28 C.F.R. §§ 14.2, 14.3 for jurisdictional purposes). Cf. *Keene I, supra* note 3, 700 F.2d at 841 n. 9 (reserving question of whether regulations under § 2672 should determine sufficiency of notice of claim under § 2675.

**110.** See *Adams v. United States, supra* note 99, 615 F.2d at 290 ("[a] claimant will ordinarily comply with 28 C.F.R. §§ 14.–14.11 if he or she wishes to settle his or her claim with the appropriate agency. These requirements go far beyond the notice requirement of section 2675"); *Douglas v. United States, supra* note 106, 658 F.2d at 447–448 ("[t]hese regulations, however, govern administrative settlement proceedings; they do not set federal jurisdictional prerequisites"); *Warren v. United States Dep't of the Interior Bureau of Land Management, supra* note 106, 724 F.2d at 778 ("[i]f Congress intended to authorize the promulgation of jurisdictional regulations, it would have created that authority directly. Congress has never delegated that authority under section 2675 (a)"); see also *Tucker v. United States Postal Serv., supra* note 106, 676 F.2d at 957–958.

**111.** 28 C.F.R. § 14.2(a) (1985).

**112.** See *GAF v. United States, supra* note 2, 593 F.Supp. at 708; *Eagle-Picher v. United States, supra* note 2, 608 F.Supp. at 1074.

posing a problem.[113] Rather, in each instance the District Court dismissed the cases for lack of jurisdiction on the ground that the claimants had failed to provide sufficient information regarding the claims presented.[114] Those dismissals reflect a misapplication of the sufficient-notice standard, which in turn rests on a misunderstanding of the role of presentment within the statutory scheme.

The District Court in both cases placed special emphasis on the fact that the companies presented the Government with a claim "seeking indemnification for a host of underlying claims." [115] In its view, the character of the claim presented was distinctive, requiring a special standard of review; "common sense dictates that the amount of information more than sufficient in a simple case may be patently insufficient in a more complex case." [116] For guidance, the court turned to the Second Circuit's opinion in *Keene I* as pertinent appellate authority on standards of notice for presentment of claims for indemnification involving multiple underlying claims; adopting *Keene I*'s approach, it demanded extensive documentation of the underlying claims—both as regards their factual predicates and the theory of liability upon which each rested. In both instances, the court found that the claimants had failed to particularize the theories of liability on which recovery for each of the underlying claims rested.[117] And even where the court found the factual information sufficient as a general matter, it rejected the factual sufficiency of the presentment as a whole for gaps or insufficiently particularized responses on some of the descriptive attachments provided by the companies for each of the underlying claims.[118]

In our view, the character of the claims here at issue does not warrant a distinctive standard for evaluating the sufficiency of the presentments tendered. Section 2675(a) remains, without regard to the character of the claim presented, a requirement of notice. By contrast, we think the District Court viewed the complexity of the claims as warranting a more stringent standard of review. The court imposed upon the claimant, not simply the burden of notifying the Government of its claims, but of substantiating them; "[i]t is not enough for Eagle-Picher to proffer individual cover sheets with spaces for particular information if the information contained on them is not provided or does not measure up to what is necessary for the Government to investigate or evaluate the claim." [119]

As these remarks suggest, the court viewed the burden on the claimant as one of *proof* as much as notice. It judged the presentments tendered factually insufficient, not because it deemed the type of information provided inadequate as a general matter, but because it deemed it insufficient in particular instances. A similar understanding informs its demand that the claimants specify particular theories of liability for each of the underlying claims for which indemnification was sought. Following the Second Circuit, the District Court construed the presentment requirement as imposing upon the claimants the burden of demonstrating the merits of their claims at the agency level as a jurisdictional prerequisite to filing suit—this despite the fact that the Standard Form 95 the Government would have claimants use for presentation

113. See *GAF v. United States, supra* note 2, 593 F.Supp. at 708. At no point in analyzing Eagle-Picher's presentment did the court allude to problems with the company's valuation of its damages claim. See *Eagle-Picher v. United States, supra* note 2, 608 F.Supp. at 1073–1077.

114. See *GAF v. United States, supra* note 2, 593 F.Supp. at 710; *Eagle-Picher v. United States, supra* note 2, 608 F.Supp. at 1077.

115. *GAF v. United States, supra* note 2, 593 F.Supp. at 709.

116. *Id.*

117. *Id.* at 709–710; *Eagle-Picher v. United States, supra* note 2, 608 F.Supp. at 1075–1077.

118. *GAF v. United States, supra* note 2, 593 F.Supp. at 709; *Eagle-Picher v. United States, supra* note 2, 608 F.Supp. at 1075.

119. *Id.* at 1075. Cf. *GAF v. United States, supra* note 2, 593 F.Supp. at 710 (information provided insufficient for United States "to evaluate its exposure").

of claims requests no such argumentation.[120] In short, despite its nominal recitation of the correct standard of review, the District Court assessed the presentments here at issue in accordance with a very different and fundamentally erroneous understanding of the jurisdictional requirements of the Act.

■ In our view, GAF and Eagle-Picher have presented the Government with notice of their claims for contribution or indemnification that is wholly sufficient to meet the jurisdictional requirements of the Act. Each has presented the Government with a sum-certain claim for damages—disaggregated to reflect each of the underlying claims they have satisfied by settlement or judgment, and the defense costs associated with them.[121] They have organized the information presented in accordance with the Government's Standard Form 95, supplying the types of information there requested by means of copious attachments which characterize individually and collectively the underlying claims they have satisfied.[122] They have further identified the acts and omissions of the Government that in their view justifies contribution or indemnification for the liabilities they have incurred.[123]

The District Court's objections notwithstanding, we believe GAF and Eagle-Picher have supplied the Government with notice sufficient for it to undertake an investigation of their claims and evaluate its potential liabilities. Most of the underlying claims for which GAF and Eagle-Picher seek contribution or indemnification are abundantly documented. The information missing on some of the attachments will not impede the Government from investigating and evaluating the acts and omissions on which the claims for contribution or indemnification are predicated. Rather, missing information on the attachments, linking injuries claimants have compensated by settlement or judgment to work performed by the claimants for the Government in accordance with its asbestos specifications, would become relevant only as a matter of proof; if the Government chose to settle or were adjudicated liable for its role in requiring asbestos in its construction contracts, the extent of its liabilities would turn on the claimants' success in attributing each of the underlying settlements or judgments to the Government acts or omissions alleged. Additional documentation might thus appropriately be demanded of claimants in the course of ensuing settlement negotiations or a trial on the merits, and at that time, they might similarly be expected to specify theories of governmental liability for each of the underlying claims. But, for purposes of Section 2675(a)'s notice requirement, the information provided by their presentments is wholly sufficient to apprise the Government of the factual predicates of their claims for contribution or indemnification: the acts and omissions which in their view make the Government liable for the claims they have satisfied, as well as considerable factual and legal information about the classes of underlying claims for which contribution or indemnification is sought.

Ironically, the Government's jurisdictional objections in these cases attest most pointedly to the sufficiency of notice provided by the challenged presentments. The Government evidently would prefer to engage appellants in evidentiary battles on jurisdictional grounds rather than to defend against appellants' claims on the merits. But Section 2675(a) entitles the Government only to notice of a claim for investigative purposes, not to proof of it. It does not empower the Government to keep these claimants out of court for more than the six-month period statutorily conferred on it to investigate and negotiate claims for settlement, and it surely does not establish the Department of Justice as the exclusive, or even primary, arbiter of

120. See 28 C.F.R. § 14.2(a) (1985); see note 111 *supra* and accompanying text.

121. See text *supra* at notes 14, 18 (GAF) and 24, 29, 30 (Eagle-Picher).

122. See text *supra* at notes 18 (GAF) and 30 (Eagle-Picher).

123. See text *supra* at notes 18 (GAF) and 27 (Eagle-Picher).

the Government's liability under the Federal Tort Claims Act.[124]

We recognize that the claims for indemnification here at issue rest on complex legal and factual predicates, and in this light understand the District Court's reservations concerning the adequacy of the presentment made. It is evident that the claims here at issue do not fit easily into the mold of tort claims involving, for example, an automobile collision or a simple workplace injury. But this does not render the claimants any less entitled to an opportunity to raise them under the Federal Tort Claims Act. The claimants have provided the Government with notice sufficient to entitle them to a trial on the merits, and it is at that juncture, rather than on jurisdictional grounds, that the task of substantiating these claims in greater detail is appropriately imposed upon them.

In adding the presentment requirement to the Federal Tort Claims Act, Congress explicitly recognized that there would be complex tort claims not susceptible to settlement within the six-month framework it adopted, observing that "there would be some difficult tort claims that cannot be processed and evaluated in this 6-month period".[125] It left to the claimant's judgment in such cases the decision whether additional time in settlement negotiations with the Government would be fruitfully expended.[126] Where, as here, the claimants, having presented their claims to numerous agencies in accordance with the requirements of Section 2675(a), determine that a judicial forum is the preferred forum for an adjudication of their claims, there is nothing in the Federal Tort Claims Act that qualifies or abrogates their right to insist upon it. Congress understood that the presentment requirement and settlement process it added to the Act would, in some instances, do little to alter the adjudication of "difficult tort claims" such as these; and, where the parties stand as divided as those before us, nor do we think it inexorably must.[127] The jurisdiction of the District Court to hear the cases having been established, it should proceed to trials on the merits.

## IV. CONCLUSION

Having held Keene precluded from relitigating the presentment standard set forth by the Second Circuit in *Keene I,* and finding Keene's 1981 notice of claim insufficient to satisfy that standard, we affirm the District Court's order in No. 84–5693 dismissing Keene's complaint for lack of subject-matter jurisdiction. With respect to Nos. 84–5638 and 85–5655, we are free to make our own determination on the type of administrative notice of claims required to establish jurisdiction to sue under the Federal Tort Claims Act. Having done so, we find that the District Court, demanding substantiation rather than simple notice of claims contrarily to Congress' purposes in adding the presentment requirement to the Act, erred in dismissing GAF's and Eagle-Picher's cases. Ample notice is provided by these appellants' presentments in these cases. Accordingly, we reverse the District Court in Nos. 84–5638 and 85–5655, and remand the cases to it for trials on the merits.

*So ordered.*

124. Accord, *Douglas v. United States, supra* note 106, 658 F.2d at 447 (1966 "amendments ... do not make agencies the ultimate or preferred arbiters of federal tort claims, rather only the initial ones"); cf. *Adams v. United States, supra* note 99, 615 F.2d at 292 ("[f]ederal court power does not depend on whether a claimant has successfully navigated his or her way through the gauntlet of the administrative settlement process, which, according to the vagaries of the claims agent, may touch picayune details, imponderable matters, or both").

125. S.Rep. No. 1327, *supra* note 9, at 5, *reprinted in* [1966] U.S.Code Cong. & Admin.News 2515, 2518; see text quoted *supra* at note 95.

126. *Id.*

127. Cf. *Douglas v. United States, supra* note 106, 658 F.2d at 449.