**Laverne Johnson REYNOLDS, et al., Plaintiffs,**

v.

**THE U.S. CAPITOL POLICE BOARD, Defendant.**

**No. 01–810 (RJL).**

United States District Court, District of Columbia.

March 31, 2004.

---

Lolita James Martin, Martin And James L.L.P., Washington, DC, for Plaintiffs.

Frederick Michael Herrera, United States Capitol Police, Washington, DC, Stratton C. Strand, U.S. Attorney's Office, Toby R. Hyman, U.S. Senate, William F. Allen, Office Of House Employment Counsel, Washington, DC, Erica A. Watkins, Office Of Senate Chief Counsel For Employment, Alexandria, VA, for Defendant.

## MEMORANDUM OPINION AND ORDER

LEON, District Judge.

Before the Court are the defendant U.S. Capitol Police Board's two motions to dismiss the Amended Complaint.[1] The two plaintiffs in this case, LaVerne Johnson Reynolds and Kennieth Thompson, seek declaratory and injunctive relief and damages for claims of discrimination on the basis of race, gender, and disability and for retaliation / hostile work environment in violation of the Congressional Accountability Act. 2 U.S.C. §§ 1301–1438. For the following reasons, the Court GRANTS the defendant's motions regarding plaintiffs Thompson and Johnson Reynolds.

### Background

#### I. Factual Background

This action involves claims by two individuals, current and former employees of the U.S. Capitol Police force, for discrimination on the basis of race, gender, and

---

1. Defendant's motion with regard to plaintiff LaVerne Johnson Reynolds is presented as a motion to dismiss the Amended Complaint, or in the alternative, for summary judgment in the case. The defendant's motion with regard to plaintiff Kennieth Thompson is presented as a motion to dismiss.

disability, as well as for retaliation / hostile work environment. Apart from their status as current and former employees of the defendant, the Court can discern no commonality as to their factual claims; the plaintiffs' allegations do not reference any of the same events or circumstances and there is no indication in the pleadings that the plaintiffs worked with each other or have any relation other than their status as plaintiffs in this litigation. In essence, it appears to the Court that their claims are two separate actions brought in one consolidated complaint against the same employer. Accordingly, the Court will review the facts put forth by each plaintiff separately.

### A. *Facts Alleged by Plaintiff Thompson*

Plaintiff Kennieth Thompson ("Thompson") is an African American male who was employed with the U.S. Capitol Police force for more than twenty years and attained the rank of Sergeant prior to his termination in 1996. Although the facts alleged by Thompson have for the most part been summarized in U.S. District Judge Riccardo Urbina's October 26, 2000 opinion in a previous case brought by Thompson against this same defendant,[2] the Court will briefly review them again here.

During Thompson's employment with the defendant, he suffered several on-the-job injuries that required recovery periods and time off of his feet. On April 26, 1993, he suffered a ruptured tendon in his foot during a police demonstration. Amend. Compl. ¶ 8. Upon his return to work, Thompson requested a transfer from the House Division to the Capitol Division, and was reassigned to weapons detector calibration in the House Building. *Id.* at ¶¶ 9–10. In January 1996, he reaggravated an injury to his knee sustained in 1985 due to constant standing required by his new position. *Id.* at ¶ 10.

In April 1996, Thompson was placed on light duty status and was transferred to the extended absence section (EAS), a status for employees with injuries lasting more than thirty days, because of the reaggravation of his knee injury. *Id.* at ¶ 11. On April 26, 1996, Thompson's physician ordered him off of his feet. Although Thompson indicates that he relayed this medical directive to his superiors, Deputy Chief Fentress Hickman allegedly told Thompson that he would show "no favoritism or consideration for [the] previous injuries." *Id.* at ¶ 12. Thompson was later transferred to the firearms section and then back to headquarters, where he was assigned to participate in the recruiting process and duties that continued to aggravate his knee. *Id.* at ¶ 13.

Thompson alleges that he was subsequently informed that his last day of work would be October 1, 1996 because his disability prevented him from performing the full range of duties in other areas of the U.S. Capitol Police force.[3] *Id.* at ¶ 14. When Thompson's accrued leave ran out, his employment terminated on February 14, 1997. *Id.*

---

**2.** *See Thompson v. The Capitol Police Board,* 120 F.Supp.2d 78 (D.D.C.2000).

**3.** Thompson does not explain the circumstances leading up to the notice of his termination in the Amended Complaint, thereby presenting a disjointed sequence of events to the Court. Although he appears to have plead additional facts with regard to the cause of his termination in his previous litigation against the defendant for discrimination, *see Thompson v. The Capitol Police Board,* Civ. No. 97–2624, Second and Third Amend. Compls., *Thompson v. The Capitol Police Board,* 120 F.Supp.2d at 80–82, the Court does not view these facts as necessary to its decision in this case, and thus will not address them in any detail here.

Thompson believes that, in addition to being terminated, he was the subject of discriminatory practices throughout his employment with the defendant. More specifically, he states that accommodations were made for white officers with disabilities that were not available to him and that these officers were allowed to stay on restricted duty status, instead of being forced to retire. *Id.* at ¶ 15. He cites a specific incident in November 1996 when a white officer, Vito Raymond, was permitted to remain on restricted duty status and then was given a civilian position, instead of being ordered to take mandatory retirement. *Id.* at ¶ 17. Thompson further alleges that the defendant discriminates against African American employees by supplying inaccurate information or withholding information when submitting documents on behalf of such employees to the Office of Worker's Compensation (OWCP) and the Office of Personnel Management (OPM). *Id.* at ¶ 18. Thompson claims that he requested his OPM file in July 2000, and discovered that the defendant had submitted a Certification of Reassignment and Accommodation Efforts that was false because it stated that accommodation was not an option in the U.S. Senate, even though Vito Raymond was being accommodated during the same period. *Id.* at ¶ 19. Sometime after December 2001, Thompson again reviewed his OPM file and alleges that he discovered the defendant had failed to submit medical documentation to OWCP. *Id.* at ¶ 20.

Based on these allegations, Thompson brings claims for discrimination based on race and disability and for retaliation / hostile work environment. This suit marks the third time Thompson has brought claims against the defendant for discriminatory conduct. In the first suit, *Kennieth F. Thompson v. The Capitol Police Board,* Civ. No. 97–2624 (D.D.C.) (*"Thompson I "*), U.S. District Judge Riccardo Urbina granted summary judgment in favor of the defendant because Thompson failed to exhaust administrative remedies under the CAA. 120 F.Supp.2d 78 (D.D.C.2000). Judge Urbina found that Thompson had filed his request for counseling 188 days after the defendant notified him of his termination, which was outside the 180 day period required by statute. *Id.* at 84. Judge Urbina also held that neither equitable tolling nor a continuing violation theory could sustain its jurisdiction over Thompson's claims. Judge Urbina subsequently denied Thompson's motion for reconsideration. *Thompson v. Capitol Police Board,* 2001 WL 797876, at *1 (D.D.C. April 25, 2001). Thompson appealed the grant of summary judgment and on December 17, 2001, U.S. Court of Appeals for the D.C. Circuit affirmed the district court's decision. *Thompson v. U.S. Capitol Police Board ,*22 Fed.Appx. 14, 15 (D.C.Cir. Dec.17, 2001) (per curiam).

In the second suit for discrimination brought by Thompson against the defendant in July 2001, *Kennieth F. Thompson v. The Capitol Police Board,* Civ. No. 01–1528 (D.D.C.) (*"Thompson II "*), U.S. District Judge Emmet Sullivan dismissed the claims for failure to prosecute.

### B. Facts Alleged by Plaintiff Johnson Reynolds

Plaintiff LaVerne Johnson Reynolds ("Johnson Reynolds") is an African American female who has been employed with the U.S. Capitol Police force for more than twenty years and has attained the rank of Sergeant. Amend. Compl. ¶ 32. While on foot patrol in 1991, Johnson Reynolds alleges that she was exposed to fumes from chemicals sprayed on magnolia trees, which caused her to have a severe allergic reaction that required medical treatment and hospitalization. *Id.* at ¶ 33. As a result of this and two other work-related

exposures, she developed occupational asthma, utricaria / angioedema, and allergic rhinitis. *Id.* at ¶ 34. According to Johnson Reynolds, these conditions cause her to experience severe allergic reactions when exposed to all secondhand tobacco smoke. *Id.* at ¶ 35.

Johnson Reynolds further alleges that although the defendant has been informed of these conditions, she continues to be assigned to working stations where she is exposed to secondhand smoke. *Id.* at ¶ 36. She claims that on March 5, 1998, she requested reassignment from the Senate Office Building to the House side (HD–2) where a non-smoking policy is in effect in congressional buildings, but her request was denied. *Id.* at ¶¶ 38, 42. Although her request was denied, Sergeant Eric Belknap, a white male with less seniority, was transferred to HD–2. When asked by Johnson Reynolds, Sergeant Belknap agreed to trade assignments with her because of her medical condition. *Id.* at ¶ 44. Deputy Chief James P. Rohan subsequently granted her request for reassignment requested. *Id.* at ¶ 45.

Johnson Reynolds also alleges that she has filed several claims with OWCP regarding her allergies. *Id.* at ¶ 46. More specifically, Johnson Reynolds states that on November 11, 1997, she filed a CA–1 claim (claim for traumatic injury) with OWCP after an allergic reaction. She was told that she needed to submit a CA–2 form instead (claim for occupational illness), and her immediate supervisor indicated she would have to use her personal sick leave and would not receive leave with continuation of pay benefits. *Id.* at ¶¶ 39–40. Johnson Reynolds alleges that she filed another OWCP claim on March 13, 2000, but was again forced to take personal sick leave instead of receiving leave with continuation of pay. *Id.* at ¶¶ 47–48. On January 9, 2001, she experienced another allergic reaction, and was forced to take personal leave. *Id.* at ¶ 49.

Johnson Reynolds believes that the defendant has "ignored the critical health concerns" associated with her exposure to smoke and has intentionally made her endure environments that are not conducive to her ability to maintain good health. *Id.* at ¶ 45. According to Johnson Reynolds, Deputy Chief Rohan has "made clear that he could not guarantee a smoke free environment..." *Id.* at ¶¶ 45, 46, 50. Furthermore, she alleges that as a result of her complaints, the defendant has accused her of violating General Order 2210 of the Rules of Conduct, regarding truthfulness. *Id.* at ¶ 51.

Johnson Reynolds claims that this conduct by the defendant "has always been a part of an ongoing pattern and practice of retaliatory behavior perpetrated against African American employees and specifically the Plaintiff who complained about [ ] discriminatory practices..." *Id.* at ¶ 52. In addition to assigning her to work stations that expose her to secondhand smoke, the defendant has allegedly given "preferences" to younger white officers with regard to job and duty assignments, even though she has more seniority, experience, and training. *Id.* at ¶ 67. Johnson Reynolds cites her application in 1995 for the position of an academic instructor, which went to a younger white male. *Id.* at ¶ 68. She also states that she applied for another instructor position in September 1999. *Id.* at ¶ 69. She indicates that although the interviewing did not start until over a year later, "the last few FLETC training instructor positions have been filled by younger White officers..." *Id.*

Finally, Johnson Reynolds alleges that the defendant requests changes in over 50% of her performance evaluations and interferes with the "effective discharge of

her duties, particularly as it pertains to complaint incidents and probable cause arrests." *Id.* at ¶ 53.

Based on this conduct, Johnson Reynolds brings claims of discrimination and retaliation / hostile work environment.

## II. *Procedural History*

On April 13, 2001, Johnson Reynolds filed the initial Complaint in this case, alleging three discrimination claims and one claim of retaliation / work environment. Thereafter, the defendant filed a motion to dismiss, or in the alternative, for summary judgment on the grounds that Johnson Reynolds had failed to timely file her lawsuit under the Congressional Accountability Act, that she failed to properly serve the defendant, and that she had failed to exhaust administrative remedies as to the retaliation / hostile work environment claim. Mot. to Dismiss, or for Summ. J., at 1–2 (July 16, 2001).

On February 26, 2002, U.S. District Judge James Robertson, who was initially assigned to this case, denied in part, and granted in part, the defendant's motion. Mem. Op., at 1 (Feb. 26, 2002). Judge Robertson held that Johnson Reynolds' lawsuit was not time-barred on the grounds put forth by the defendant because the Office of Compliance sent her a letter containing misinformation regarding the deadline for filing her claims and equitable tolling applies to claims under the statute. *Id.* at 4–5. Judge Robertson also held that the her retaliation claim could not be pursued, stating that "passing references" to retaliatory conduct to "support a broader allegation of hostile work environment did not put her employer on notice that Ms. Johnson Reynolds felt she had a direct retaliation claim..." *Id.* at 6. Johnson Reynolds was ordered to effectuate service on the defendant within eleven days of the court's order.

Several months later, plaintiff Johnson Reynolds, in effect, moved to amend the Complaint after her counsel represented in the initial status conference before this Court that it would not be frivolous to do so, though the Court made clear that it was not interested in any unnecessary filings in this case. Hr'g Tr., at 16, 19 (July 22, 2002). The Amended Complaint, however, for no apparent reason added Thompson as a second plaintiff and re-plead the four claims with facts related to both plaintiffs. The defendant then filed two motions to dismiss the Amended Complaint, one corresponding to the claims of each plaintiff. For the following reasons, the Court GRANTS both of the defendant's motions.

### *Discussion*

The Court will only dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C.Cir.1994). However, even if the Court accepts as true all of the factual allegations set forth in the complaint, *Doe v. United States Dept. of Justice*, 753 F.2d 1092, 1102 (D.C.Cir.1985), and construes the complaint liberally in favor of the plaintiff, *Schuler v. United States*, 617 F.2d 605, 608 (D.C.Cir.1979), it "need not accept inferences drawn by [the] plaintiffs if such inferences are unsupported by the facts set out in the complaint." *Kowal*, 16 F.3d at 1276.

It is the plaintiff's burden of persuasion to establish the existence of subject matter jurisdiction by a preponderance of the evidence. *Thompson v. Capitol Police Board*, 120 F.Supp.2d 78, 81 (D.D.C.2000). Where a motion to dismiss presents a dis-

pute over the factual basis of the court's subject matter jurisdiction, the Court "may not deny the motion to dismiss merely by assuming the truth of the facts alleged by the plaintiff and disputed by the defendant" and therefore "must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss." *Phoenix Consulting, Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C.Cir. 2000); *In re Swine Flu Immunization Products Liability Litigation*, 880 F.2d 1439, 1442–43 (D.C.Cir.1989).[4]

## I. Statutory Framework: The Congressional Accountability Act of 1995

The Congressional Accountability Act ("CAA") makes several anti-discrimination laws, such as Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Americans with Disabilities Act, 42 U.S.C. § 12101 et. seq., applicable to the legislative branch of the federal government. 2 U.S.C. §§ 1301–1438. Under the statutory framework of the CAA, federal courts only have jurisdiction over civil actions brought by a covered employee if that employee has completed mediation and counseling requirements under the statute. 2 U.S.C. §§ 1404, 1408. The covered employee must commence an action under the CAA by requesting counseling not later than 180 days after the alleged discriminatory action, 2 U.S.C. § 1402(a), and once the 30–day counseling period ends, the employee can then file a request

for mediation with the Office of Compliance. 2 U.S.C. § 1403(a). A civil action may commenced only to seek redress for a violation for which the employee has completed both counseling and mediation. 2 U.S.C. § 1408(a).

## II. Claims of Plaintiff Thompson

The defendant moves for dismissal of Thompson's claims on two grounds. First, the defendant argues that Thompson is precluded from relitigating the issue of the Court's jurisdiction over his claims because the court in *Thompson I* previously determined that it lacked jurisdiction.[5] Second, the defendant argues that this Court lacks jurisdiction because Thompson failed to exhaust administrative remedies under the CAA. The Court agrees that issue preclusion prevents Thompson from relitigating the issue of jurisdiction presented in *Thompson I*. The Court also finds that because Thompson fails to demonstrate that he exhausted administrative remedies under the CAA or that any equitable doctrine can sustain his otherwise untimely claim, summary judgment based on lack of jurisdiction is appropriate.

### A. Issue Preclusion Regarding Jurisdiction as to Conduct Prior to and Leading up to the Notice of Plaintiff's Termination on September 25, 1996

■ "Where there is a mutuality of parties, the party alleging jurisdiction in a

4. Rule 12(b) of the Federal Rules of Procedure otherwise requires that a motion to dismiss be considered according to summary judgment standard if the movant submit matters outside of the pleadings that are not excluded by the Court. Fed.R.Civ.P. 12(b), 56; *see also IMS v. Alvarez*, 129 F.3d 618, 619 n. 1 (D.C.Cir.1997).

5. In its motion to dismiss plaintiff Thompson's claims, the defendant claims that the jurisdictional issue is barred by res judicata. Although the term res judicata is often used in reference to both claim and issue preclusion, the precise doctrine to be applied in this case is issue preclusion. A dismissal of a complaint for lack of jurisdiction does not adjudicate the merits so as to make the case res judicata on the substance of the asserted claim. *GAF Corp. v. United States*, 818 F.2d 901, 913, n. 72 (D.C.Cir.1987). However, it does adjudicate the court's jurisdiction, and second complaint cannot relitigate the same jurisdictional issues. *Id.*

second action will be precluded from relitigating any issue of fact or law determined against it in the first action which it had the full opportunity to litigate." *GAF Corp. v. United States*, 818 F.2d 901, 913 (D.C.Cir.1987). Although Rule 41 of the Federal Rules of Civil Procedure provides that a dismissal for lack of jurisdiction will not operate as "an adjudication on the merits," it will, however, preclude relitigation of the precise issues of jurisdiction that lead to the dismissal in the previous case. *Id.* at 12. Where the jurisdictional issue was "actually litigated," *i.e.*, contested by the parties and submitted for determination by the court, and then "actually and necessarily determined by a court of competent jurisdiction," issue preclusion may raise a bar to a plaintiff's claims. *McLaughlin v. Bradlee*, 803 F.2d 1197, 1201–02 (D.C.Cir.1986).

▪ However, a claim of jurisdiction will not be precluded if subsequent to the initial dismissal there are developments tending to cure the identified jurisdictional deficiency. *GAF Corp.*, 818 F.2d at 912–13. The "curable defect" exception may apply where a precondition requisite to the court's jurisdiction in the previous suit was not alleged or proven, and is raised in the second suit. *Id.* (citing Fed.R.Civ.P. Rule 41(b)).

▪ In *Thompson I*, the plaintiff brought CAA claims for race and gender

discrimination and in support of these claims, presented a more detailed version of the same events leading up to his termination than those plead in this action.[6] *See Thompson I*, Third Amend. Compl. (Def. Mot. to Dismiss Thompson, Ex. C).[7] Judge Urbina held that plaintiff Thompson filed his administrative complaint late because he filed his claim with the Office of Compliance on April 1, 1997, 188 days after he was notified of his termination on September 25, 1996. *Thompson I*, 120 F.Supp.2d 78, 82 (D.D.C.2000). Judge Urbina found that the proper focus for statute of limitations analysis in discrimination cases is "the time of the discriminatory acts, not...the time at which the consequences of the acts become most painful." *Id.* at 82 (citing *Delaware State College v. Ricks*, 449 U.S. 250, 258, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980)). Thus, Judge Urbina rejected Thompson's claim that his action was not time-barred because his termination resulted in an inability to take a promotional exam at a later time. *Id.*

Judge Urbina also rejected Thompson's arguments that a continuing violation theory or equitable tolling could sustain his action because the plaintiff had not alleged any discriminatory acts within the limitations period. *Id.* at 83. With regard to equitable tolling, the court stated: "Although the court holds that equitable tolling principles do apply to the CAA, the D.C. Circuit has held that the court's pow-

---

6. In this case, Thompson alleges two specific events that occurred more than three years after his termination that were not plead in *Thompson I*. First, he alleges that he discovered a false certification in his OPM file in July 2000 and then discovered defendant's alleged failure to submit the required documentation to OWCP sometime after December 2001. The Court considers these facts in the context of whether Thompson has cured the jurisdictional defect by introducing new facts not presented in *Thompson I, see infra* pp. 17–20, and to the extent that they could form an independent basis to sustain his claims, even

if claims based on previous discriminatory conduct are barred by issue preclusion. *See infra* p. 20.

7. Thompson did not formally plead a retaliation claim in *Thompson I*, but did make several allegations of retaliatory conduct. Second Amend. Compl. ¶¶ 18, 19, 20. Judge Urbina granted the defendant's motion to dismiss Thompson's allegations of retaliation for failure to allege any causal connection between his engagement in protected activity and the alleged discriminatory conduct. *Thompson I*, Mem. Op. at 8–9 (Aug. 31, 1999).

er to toll the statute of limitations 'will be exercised only in extraordinary and carefully circumscribed instances.'" *Id.* at 83 (citing *Mondy v. Secretary of the Army,* 845 F.2d 1051, 1057 (D.C.Cir.1988)). Thompson failed to assert that he wanted or needed "vital information" that he could not obtain, and thus Judge Urbina found that the his case did not present an "extraordinary and carefully circumscribed" instance. *Id.* As Thompson failed to timely exhaust administrative remedies under the CAA or put forth an equitable basis to sustain his untimely claims, the court lacked subject matter jurisdiction over such claims.[8] *Id.* at 84.

Thompson attempts to relitigate the Court's jurisdiction over the conduct at issue in *Thompson I,* absent proof that he has cured the jurisdictional defect identified in that case. Based on the record in this case, the Court finds that the issue of the court's jurisdiction over claims based on the defendant's conduct prior to and leading up to time the plaintiff received notification of his termination on September 25, 1996 was actually and necessarily decided in *Thompson I. McLaughlin v. Bradlee,* 803 F.2d 1197, 1201–02 (D.C.Cir. 1986). Furthermore, this Court finds *no*

evidence that plaintiff Thompson lacked either the incentive or the opportunity to litigate the issue of jurisdiction in *Thompson I. Id.* at 1201–02 n. 1. Thus, in the absence of proof that this jurisdictional defect has been cured, this Court has no jurisdiction over the plaintiff's current claims to the extent that they are based on the same conduct for which the plaintiff failed to file a timely charge, *i.e.,* conduct occurring prior to and leading up to the notice of plaintiff's termination.[9]

Upon consideration of the claims made in the Amended Complaint and the plaintiff's opposition, the Court finds that he fails to show that the jurisdictional defects identified in *Thompson I* have been cured. As previously noted, while the Court will consider facts in the light most favorable to the plaintiff upon a motion to dismiss, it is the plaintiff's burden of persuasion to demonstrate jurisdiction in the case. He has failed to do so. In his opposition to the defendant's motion to dismiss, Thompson does not dispute that he failed to request counseling within the statutory period for the conduct occurring prior to and leading up to the notice of termination on September 25, 1996, and thus did not exhaust administrative remedies.[10] Instead,

8. The D.C. Circuit has held on several occasions that administrative deadlines are not "jurisdictional," rather, they function like statutes of limitation and are subject to waiver, estoppel, and equitable tolling. *Brown v. Marsh,* 777 F.2d 8, 14 (D.C.Cir.1985); *see also Simpkins v. WMATA,* 1997 WL 702349, at *2 (D.C.Cir. Oct.10, 1997). In *Thompson I,* Judge Urbina found the court lacked subject matter jurisdiction on summary judgment stage after considering whether the plaintiff had exhausted administrative remedies, and whether equitable doctrines were applicable. This is the "jurisdictional" flaw to which the Court now refers.

9. Although the plaintiff did not formally allege a separate retaliation claim in *Thompson I,* as he does in this case, the claim in this case is subject to the same statute of limitations as his discrimination claims if they are

plead under the CAA. Accordingly, to the extent that the Court finds it lacks jurisdiction on the basis of issue preclusion for claims arising from defendant's actions prior to and leading up to the notice of plaintiff's termination on September 25, 1996, its jurisdiction over the retaliation claim based on those actions is similarly precluded.

10. With regard to the counseling and mediation requirements of the CAA, Thompson merely alleges in the Amended Complaint that he has "complied with all administrative processes pursuant to Title II of the CAA..." Amend. Compl. ¶ 2. Indeed, the only detailed facts regarding Thompson's requests for counseling and mediation are presented by the defendant. *See* Def. Mot. to Dismiss Thompson, Ex. I, J. Although the Office of Compliance indicates that Thompson filed a

the plaintiff argues that there are "substantive differences" between the *Thompson I* case and this action. Thompson Opp. at 6. First, Thompson argues that "exhaustion of administrative remedies by one member of the class satisfies the requirement for all others with sufficiently similar grievances." *Id.* Second, Thompson argues that equitable principles are applicable where the plaintiff "has reason to believe that an action was taken for discriminatory purposes when it takes place but later discovers facts which reveal the discriminatory nature of that action." *Id.* at 9. Finally, Thompson argues a continuing violation theory supports a challenge to actions outside of the normally applicable limitations period. *Id.* at 11.

However, none of these arguments resuscitates Thompson's untimely claims. His reliance on precedent regarding class actions is misplaced. Even if the Court found that the doctrine of vicarious exhaustion was applicable to CAA claims while the issue of class certification is pending, see *Harris v. Office of the Architect of the Capitol*, 16 F.Supp.2d 8, 10 (D.D.C.1998), the plaintiffs have neither filed a motion to certify a class nor given an indication that they have met the requirements set forth in the local rules and Rule 23 of the Federal Rules of Civil Procedure for asserting class claims. Furthermore, even if Thompson had properly plead a class action complaint, tolling under a vicarious exhaustion theory is triggered upon the timely filing of an administrative charge and would only be applicable to claims that would have been filed during the pendency of a class. *See, e.g., American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 554, 94 S.Ct.

756, 38 L.Ed.2d 713 (1974); *Barrett v. U.S. Civil Service Comm'n*, 439 F.Supp. 216, 218 (D.D.C.1977). In short, Thompson's claims, which were untimely when he filed his first request for counseling in April 1997, cannot be saved by bootstrapping them to Johnson Reynolds claims, for which she first filed administrative claims on June 30, 2000 and August 28, 2000. To hold otherwise would circumvent the express language of the CAA, which requires each individual to comply with counseling and mediation requirements in timely fashion in order to bring a suit in district court.

Furthermore, Thompson fails to put forth a basis for equitable tolling. *Mondy v. Secretary of the Army*, 845 F.2d 1051, 1057 (D.C.Cir.1988). The Court's equitable power to toll a statute of limitations "will be exercised only in extraordinary and carefully circumscribed instances." *Id.; see also Smith–Haynie v. District of Columbia*, 155 F.3d 575, 579–80 (D.C.Cir. 1998). Thompson argues that equitable tolling is appropriate where "a plaintiff has no reason to believe that an action was taken for discriminatory purposes when it takes place but later discovers facts which reveal the discriminatory nature of the action." *Smith v. Lubbers*, 1982 WL 328, **3–4, 1982 U.S. Dist. LEXIS 11694, *6–7 (D.D.C., February 22, 1982). However, even if the Court adopted this discovery rule, the only allegations raised in the Amended Complaint that might be considered information previously unavailable are the claims that he discovered a false certification in his OPM file in July 2000 and discovered defendant's failure to submit documentation to OWCP sometime after December 2001. Amend. Compl.

second request for counseling on January 3, 2001, *id.*, Thompson does not reference this request in the Amended Complaint or his opposition to the defendant's motion to dismiss. The Court has no knowledge of the

substance of this request and whether it concerned conduct at issue in *Thompson I* or the current action. Accordingly, the Court has no basis to find that the request bears on the timeliness of the Thompson's claims.

¶¶ 19, 21, 96. There is no indication that his OPM file was unavailable in 1997, when Thompson could have timely filed his CAA claims. Moreover, there is no obvious relationship between the discovery of the false certification, or failure to submit documentation, and the discriminatory conduct Thompson alleges occurred prior to and at the time of his termination, *i.e.*, the newly discovered evidence cannot be said to "reveal the discriminatory nature" of the previously known conduct. Finally, the Court finds no other "extraordinary" circumstances present that would warrant equitable tolling. Simply stated, the Court's equitable power to toll a statute of limitations does not extend to what is, at best, a garden variety claim of neglect. *Washington v. WMATA*, 160 F.3d 750, 753 (D.C.Cir.1998) (citing *Irwin v. Dept. of Veterans Affairs*, 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990)).

This Court similarly rejects Thompson's assertion that a continuing violation theory supports jurisdiction over this action even though his claims were untimely. As previously noted, claims for conduct occurring outside of this 180–day period are considered time-barred under the CAA statutory scheme. Although courts in this district previously recognized a continuing violation exception to the application of statutes of limitation in civil rights cases, *Thompson v. Capitol Police Board*, 120 F.Supp.2d 78, 82–83 (D.D.C.2000), *Albritton v. Kantor*, 944 F.Supp. 966, 971–72 (D.D.C.1996), the Supreme Court subsequently held in the Title VII context that "discrete discriminatory acts," such as terminations and failure to promote, are not actionable if time-barred, even when they are related to acts alleged in timely filed charges. *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 122, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002); *see also Singletary v. District of Columbia*, 351 F.3d 519, 526 (D.C.Cir.2003). Indeed, the Supreme Court stated: "[S]trict adherence to the

procedural requirements specified by the legislature is the best guarantee of even-handed administration of the law." *Morgan*, 536 U.S. at 108, 122 S.Ct. 2061. Thus, each discrete discriminatory act starts a new clock for filing charges alleging that act. *Id.* at 113, 122 S.Ct. 2061.

This Court finds that the rationale and holding in *Morgan* are equally applicable to civil rights claims brought under the CAA, which incorporates the protections of Title VII and expressly provides that civil actions can only be brought for conduct within 180 days of an administrative charge. To hold otherwise would allow plaintiffs to circumvent the procedural requirements of the CAA. Accordingly, Thompson's argument for the application of this theory is rejected because his claims involve the type of discrete action the Supreme Court discussed in *Morgan*. Moreover, although the Supreme Court recognized that hostile work environment claims "are different in kind from discrete acts" because "[t]heir very nature involves repeated conduct," *id.* at 115, 122 S.Ct. 2061, this Court finds that Thompson's hostile work environment is nonetheless time-barred under the CAA. The Supreme Court expressly held that with regard to such claims, so long as an act contributing to the claim occurred within the statutory time period, the Court may consider an entire period of the hostile environment, even if some of the component acts fall outside of that statutory time period. *Id.* at 117, 122 S.Ct. 2061. As Thompson fails to allege any conduct falling within the 180–period prior to his April 1997 request for counseling, the Court will not apply a continuing violation theory to any of his claims.

Accordingly, Judge Urbina having found that Thompson failed to exhaust administrative remedies, and Thompson having failed to cure the jurisdictional defect

found by Judge Urbina, Thompson cannot relitigate this issue of jurisdiction and the Court grants the defendant's motion to dismiss as to this issue.

### B. Failure to Exhaust Administrative Remedies as to Conduct Occurring After the Notice of Plaintiff's Termination

Thompson also alleges two events occurring more than three years after the notice of his termination in support of his CAA claims, the discovery of a false certification in his OPM file in July 2000 and the defendant's failure to submit OWCP documentation sometime after December 2001. Amend. Compl. ¶¶ 19, 20. These facts were not alleged in *Thompson I* and thus warrant independent consideration to determine if they bear on Thompson's ability to sustain jurisdiction over his claims.

Even though the Court has found it has no jurisdiction on the grounds of issue preclusion over the conduct alleged in *Thompson I,* Thompson might sustain his claims if he could show that he exhausted administrative remedies with regard to conduct occurring subsequent to his termination, or that equitable doctrines applied to sustain his claims. However, he has not. The D.C. Circuit has held that the requirement that an administrative charge be timely filed is, strictly speaking, not jurisdictional. *See, e.g., Simpkins v. WMATA,* 1997 WL 702349, at *2 (D.C.Cir. Oct 10, 1997). Rather this requirement is subject to waiver, estoppel, and equitable tolling. Thus, for the purpose of considering this issue, the Court will treat the defendant's motion as one for summary judgment, to be granted only if there is "no genuine issue of material fact." Fed. R.Civ.P. 56(c).

Under this standard, the Court finds that there are no genuine issues of material fact regarding Thompson's failure to timely file administrative charges following his reviews of his OPM file in 2000 and 2001 under the CAA statutory framework. Although the defendant has presented facts indicating that Thompson filed a request for counseling with the Office of Compliance on January 3, 2001, Thompson puts forth no evidence regarding what conduct the request discussed and whether the request relates to the conduct in this case. Moreover, the defendant has presented evidence in the form of a certification from the Office of Compliance, see Mot. to Dismiss Thompson, Ex. I, J, that the defendant last received a notice of the end of mediation pursuant to 2 U.S.C. § 1404 on April 10, 2001, which means that even if Thompson requested counseling for conduct related to the errors in his OPM file, he would have had to file a suit within a 30–90 day window, *i.e.,* from May 10, 2001 to July 9, 2001. 2 U.S.C. § 1404. The Amended Complaint including Thompson's claims was filed on September 24, 2002. The plaintiff puts forth no proof that he exhausted administrative remedies with regard to conduct not considered in *Thompson I,* or that any equitable doctrine is applicable to sustain his claims. Accordingly, the Court grants summary judgment as to Thompson's claims, to the extent that they are not precluded under the *Thompson I* decision. Thus, the Thompson's claims are dismissed on the grounds of issue preclusion and failure exhaust administrative remedies.

### III. Claims of Plaintiff Johnson Reynolds

The defendant moves for dismissal of, or in the alternative, for summary judgment, on Johnson Reynolds' claims of race, gender, and disability discrimination (Counts I, II, and III) on the grounds that she has failed to demonstrate jurisdiction in this Court and also fails to state a claim upon which relief can be granted. The defendant further asserts that the "law of

the case" doctrine bars further adjudication of Johnson Reynold's retaliation / hostile work environment claim (Count IV) and to the extent that her claim is "newly" plead, it fails to state a claim upon which relief can be granted.[11] For the following reasons, the Court agrees.

### A. Counts I and II: Race and Gender Discrimination

In Counts I and II of the Amended Complaint, Johnson Reynolds alleges that the defendant engaged in race and gender discrimination in violation of the CAA by "giving preferences" to younger white officers with regard to job and duty assignments. *Id.* at ¶¶ 67, 76. As previously noted, the CAA applies to Title VII and other civil rights and labor statutes to legislative branch employees. 2 U.S.C. §§ 1302. In support of its motion to dismiss, or in the alternative, for summary judgment, the defendant argues that the Amended Complaint is a "shotgun" pleading from which "it is impossible to determine when the alleged discriminatory acts occurred and whether the Plaintiff has complied with the relevant time frames and administrative exhaustion requirements." Mot. to Dismiss Johnson Reynolds, at 11. As previously noted with regard to Thompson's claims, for the purpose of considering the issue of administrative exhaustion, however, the Court will treat the defendant's motion to dismiss as one for summary judgment, to be granted only if there is "no genuine issue of material fact." Fed.R.Civ.P. 56(c).

Johnson Reynolds' race and gender discrimination claims are based on four factual allegations. First, she alleges that she applied for an academic training position in 1995 and although she interviewed, a younger white male officer was given the position. Amend. Compl. at ¶ 68. Second, she alleges that in September 1999, she applied for another academic training position in Behavior Sciences at FLETC. *Id.* at ¶ 69. Johnson Reynolds states that the interview process for this job began a year later.[12] *Id.* Third, she alleges that she was assigned to work stations that were likely to affect her health while white officers were accommodated. *Id.* at ¶ 70. Finally, she claims that when she was eligible for promotions, the defendant "prefabricated an incident that resulted in [her] being written up and disciplined..." *Id.* at ¶ 71.

As previously noted in the context of Thompson's claims, the plaintiffs merely make a general allegation that they have complied with administrative processes under the CAA with regard to their claims, Amend. Compl. ¶ 2, but fail to provide more detail as to the exhaustion of administrative remedies prerequisite to bringing a suit in district court. Johnson Reynolds makes a passing reference to "her initial complaint in August 2000." *Id.* at ¶ 53. However, the defendant's pleadings indicate that the plaintiff has filed two requests for counseling, on June 30, 2000 and August 28, 2000. Mot. to Dismiss Johnson Reynolds, at 14, Ex. 2–3.

---

11. The defendant also indicates that it challenges Johnson Reynolds' "pattern and practice" claim. Def. Mot. to Dismiss Plaintiff Johnson Reynolds' Amended Complaint or, in the Alternative, for Summary Judgment ("Mot. to Dismiss Johnson Reynolds"), at 30. Although the plaintiffs describe the defendant's conduct as "continuous" or an "ongoing pattern or practice" at various points in the Amended Complaint, the plaintiffs have not plead a separate "pattern and practice" claim. Accordingly, the Court finds it unnecessary to specifically address this argument of the defendant.

12. While she alleges that other instructor positions were filled by white males, the plaintiff alleges no further facts regarding the outcome of the interview process. *Id.* at ¶ 69.

Johnson Reynolds fails to raise any genuine issues of material fact with regard to her compliance with the statutory requirements to bring a lawsuit by requesting counseling for conduct occurring 180 days prior to the request, and completing the counseling and mediation requirements under the statutory framework. 2 U.S.C. §§ 1402–1404. The 1995 selection process for the instructor position obviously occurred more than 180 days before either request, and it is not clear when a decision was made as to the position open in September 1999. Moreover, the Court is unable to discern when Johnson Reynolds was assigned to unhealthy working stations [13] or when she was "written up." The copies of the requests for counseling put forth by the defendant to support its motion do not shed any further light on the timing of the alleged discriminatory acts, and do not make references that align to with Johnson Reynolds' claims. *Id.* at Ex. 2 (June 20, 2000 request for counseling describing "frivolous job action" involving officer under direct supervision in February 2000). Thus, even if the Court construes the defendant's exhibits in the light most favorable to Johnson Reynolds, it cannot conclude that there is a genuine issue of material act as to whether Johnson Reynolds timely filed an administrative charge for the conduct alleged here or whether an equitable doctrine could otherwise sustain her claims.

Instead of providing further detail as to her exhaustion of administrative remedies that would raise a genuine issue of material fact, Johnson Reynolds relies on assertions of a continuing violation and vicarious tolling for class actions to sustain jurisdiction over these claims. Johnson Reynolds

Opp. at 2–3. As previously noted, the Supreme Court has limited the continuing violation doctrine to hostile work environment claims, *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 122, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002), and this Court finds that Johnson Reynolds has put forth no basis for vicarious tolling with regard to her claims in this case.

Accordingly, as Johnson Reynolds has failed raise any genuine issue of material fact with regard to administrative exhaustion of remedies for her race and gender discrimination claims or that equitable tolling or any other doctrine supports the Court's jurisdiction over these claims, *Thompson v. Capitol Police Board*, 120 F.Supp.2d 78, 81 (D.D.C.2000), the Court grants summary judgment on Counts I and II of the Amended Complaint.

### B. Count III: Disability Discrimination in Violation of the Americans With Disabilities Act

■ In Count III of the Amended Complaint, Johnson Reynolds alleges that the defendant engaged in disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., as applied to legislative branch employees through the CAA. To establish a claim under the ADA, she must show that (1) she has a "disability," and (2) with a reasonable accommodation, she could perform the essential functions of her job. *Flemmings v. Howard University*, 198 F.3d 857, 861 (D.C.Cir.1999); *Heasley v. D.C. General Hospital*, 180 F.Supp.2d 158, 165 (D.D.C.2002). Johnson Reynolds must also specify the reasonable accommodation she seeks. *Id.* The ADA

---

**13.** Johnson Reynolds has alleged she requested and was denied a reassignment in March 1998, which is clearly outside the statutory time period. Amend. Compl. ¶ 42. While the her request for counseling on August 28,

2000 indicates she was placed on foot patrol in February 2000, there is no indication in that request that she considered this an unhealthy work assignment. Mot. to Dismiss Johnson Reynolds, Ex. 3.

defines a "disability" as a "physical or mental impairment that substantially limits one or more of the major life activities" of an individual. 42 U.S.C. § 12102(2)(A). "Far from protecting all impaired individuals from any sort of adverse employment action, the ADA protects a much more narrowly defined class of persons from particular types of discriminatory acts by employers." *Flemmings*, 198 F.3d at 860.

Johnson Reynolds claims that her physical disability requires that she live and work in a smoke-free environment, and that the defendant has denied her request for job and duty assignments based on this disability, while giving preferences to non-disabled white officers. Amend. Compl. ¶¶ 84–85. The more specific factual allegations alleged by Johnson Reynolds are that she requested reassignment on March 5, 1998 due to her severe allergies and was denied the assignment. *Id.* at ¶¶ 42–44. In addition, she claims that when she filed a claims with OWCP for workers compensation benefits on November 11, 1997 and March 13, 2000, she was forced to submit a form for occupation illness instead of a form for traumatic injury, and then had to take personal leave, instead of receiving leave with continuation of pay benefits. *Id.* at ¶¶ 39–40, 47–48. On January 9, 2001, she was again forced to take personal leave. *Id.* at 49.

The defendant moves for dismissal of this claim on the grounds that it is time-barred and that Johnson Reynolds fails to state a claim. Mot. to Dismiss Johnson Reynolds, at 24–27. Specifically, the defendant argues that the March 5, 1998 denial of reassignment occurred almost two years *prior* to Johnson Reynolds' Au-

gust 28, 2000 request for counseling under the CAA statutory framework. Mot. to Dismiss Johnson Reynolds, at 25.[14] In addition, the defendant argues that there is no indication that any events involving preferential treatment given to non-disabled white officers occurred during the statutory period and neither of Johnson Reynolds' requests for counseling even reference such events. Mot. to Dismiss Johnson Reynolds, at 25. Thus, to the extent that her claim relies on this alleged events, the claim is time-barred. The Court finds that summary judgment is appropriate as to the issue of administrative exhaustion on this claim.[15] As with her other discrimination claims, Johnson Reynolds fails to put forth any facts raising an issue of material fact as to her exhaustion of administrative remedies, or the applicability of equitable doctrines to salvage her untimely claims.

The only remaining conduct that could form the basis for Johnson Reynolds' disability claim relates to the denial of the her requests for leave with continuation of pay. With regard to these allegations, the Court finds that even if it were to assume, *arguendo*, that this conduct occurred during the statutory period, the plaintiff fails to state any cognizable claim under the ADA. Johnson Reynolds is essentially alleging that the defendant forced her to submit CA–2 forms to OWCP instead of CA–1 forms for traumatic illness, resulting in her inability to obtain leave with continuation of pay. Even in the light most favorable, these facts would not support a claim under the ADA.

---

14. Johnson Reynolds' earlier request for counseling on June 30, 2000 did not reference the alleged disability discrimination. *See* Mot. to Dismiss Johnson Reynolds, Ex. 2.

15. It is also worth noting that even if Johnson Reynolds had requested counseling for the denial of her March 5, 1998 request for reassignment in a timely manner, the conduct still might not support a claim for discrimination because she concedes that the request was later granted by the defendant. Amend. Compl. ¶ 45.

Although Johnson Reynolds is not required to make out a *prima facie* case in her complaint, the Court must nevertheless dismiss claims where she fails to comply with the liberal pleading standards of Rule 8(a). *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1118 (D.C.Cir.2000). Johnson Reynolds first fails to allege facts that show that her physical ailments constitute a "disability" under the statute. However, even if the Court could find that the allergic reactions impeded Johnson Reynolds in a major life activity, she fails to allege that she requested reasonable accommodations that would enable her to perform the essential functions of her job. *Evans v. Davis Memorial Goodwill Industries*, 133 F.Supp.2d 24, 27–28 (D.D.C. 2000) (employers can only be held liable for discriminating about known disabilities, and the employee must provide some notice of the disability and the limitations it imposes to succeed on an ADA claim); *Becker v. Gallaudet University*, 66 F.Supp.2d 16, 22–23 (D.D.C.1999) (failure to request reasonable accommodation so that employee could perform essential functions is "fatal" to ADA claim). Moreover, the Court fails to see any plausible connection between her failure to obtain leave with continuation of pay (ostensibly caused by the defendant's unwillingness to submit proper documentation) and her ability to perform the essential functions of her job. There is no allegation that she has been prevented from taking personal leave for her conditions, and thus the primary issue appears to be whether she is compensated for that leave. While claims for such compensation may give rise to an action under the Federal Employees Compensation Act ("FECA"), 5 U.S.C. §§ 8101–8193, a statute governing the availability of workers' compensation, this statute is not incorporated under the CAA. 2 U.S.C. § 1302 (laws made applicable to the legislative branch through the CAA). Accordingly, the Court finds that Johnson Reynolds has failed to state a disability discrimination claim under the CAA. Count III of the Amended Complaint is thus dismissed as to Johnson Reynolds.

## C. Count IV: Retaliation / Hostile Work Environment

■ In the final count of the Amended Complaint, Johnson Reynolds realleges a claim of retaliation / hostile work environment. The defendant moves for dismissal of this claim on the grounds that the law of the case doctrine bars further adjudication of the claim and to the extent that she alleges new facts not previously submitted to the Court, her allegations still fail to state a claim. Mot. to Dismiss Johnson Reynolds, at 27–29.

The Court finds that the law of the case doctrine prevents it from further adjudication on the retaliation claim to the extent that it was presented to Judge Robertson. *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988). In his memorandum opinion, Judge Robertson specifically ruled that Johnson Reynolds did not put the defendant on notice of her retaliation claim during the administrative process and thus could not proceed with this claim. Mem. Op. at 6. Nevertheless, this claim was subsequently realleged in the Amended Complaint, and the only new allegations regarding Johnson Reynolds are that the defendant has allegedly requested changes in her officer evaluations and otherwise interfered with the discharge of her duties, "particularly as it pertains to complaint incidents and probable cause arrests." Amend. Compl. at ¶ 53. Johnson Reynolds indicates that these events occurred after the filing of her "initial complaint" in August 2000. *Id.* As noted in this opinion several times, Johnson Reynolds fails to put forth any facts indicating that she filed another administrative charge pursuant to

the CAA statutory framework following the August 28, 2000 request for counseling. *Halcomb v. Office of the Senate Sergeant–at–Arms,* 209 F.Supp.2d 175, 177 (D.D.C. 2002) (dismissing retaliation claim based on post-counseling conduct for failure to exhaust administrative remedies). Accordingly, the Court finds that Johnson Reynolds has not raised any genuine issue of material fact with regard to the exhaustion of administrative remedies for the new conduct alleged in the Amended Complaint in support of the retaliation claim, or the applicability of equitable doctrines to sustain her claim. The Court thus grants summary judgment as to Count IV, on the grounds that the plaintiff failed to exhaust administrative remedies under the CAA.

### *ORDER*

For the reasons set forth above, it is this 31st day of March, 2004, hereby

**ORDERED** that the defendant's Motion to Dismiss the Amended Complaint with regard to Plaintiff Kennieth Thompson [# 29] is **GRANTED**; and it further

**ORDERED** that the defendant's Motion to Dismiss Plaintiff Johnson Reynolds' Amended Complaint or, in the Alternative, for Summary Judgment [# 30] is **GRANTED**; and it is further

**ORDERED** that the above-captioned action shall be dismissed following the Court's ruling on the defendant's Motion for Sanctions [# 34].

**SO ORDERED.**